# CARROLL GAIL WHITE *v.* STATE OF MARYLAND

[No. 27, September Term, 1969.]

*Decided October 30, 1969.*

52

The cause was argued before MURPHY, C.J., and AN-
DERSON, MORTON, ORTH, and THOMPSON, JJ.

*Gilbert W. Hovermale* for appellant.

*William E. Brannan, Assistant Attorney General,* with
whom were *Francis B. Burch, Attorney General, David
K. Poole, Jr., State's Attorney for Washington County,*
and *John B. Wolfkill, Assistant State's Attorney for
Washington County,* on the brief, for appellee.

MORTON, J., delivered the majority opinion of the
Court. ORTH, J., dissents. Dissenting opinion by ORTH,
J., on page 54 *infra*.

The appellant, Carroll Gail White, was charged in a
two count indictment with assault with intent to maim
and assault and battery in the Circuit Court for Wash-
ington County. The charges arose out of appellant's al-
leged participation in a riot at the Maryland Correctional
Training Center, near Hagerstown, Maryland, on April
7, 1968. His motion for judgment of acquittal on the
first count was granted and the jury found him guilty
of assault and battery.

He first contends that the trial judge committed re-
versible error by instructing the jury on both counts.
Having granted the appellant's motion for a judgment
of acquittal on the first count, the trial judge clearly
should not have given instructions regarding that count.
However, no objection to the instructions was interposed
by appellant as required by Md. Rule 756 f, and in the
absence of objection an allegation of error in the instruc-
tions is not ordinarily reviewable by this Court. As we

said in *Parker v. State,* 4 Md. App. 62, 67: "The reason for the rule requiring objection as a prerequisite to appellate review is a salutary one, being designed to afford the trial judge an opportunity to correct inadvertent omissions or inaccuracies in his instructions, where the alleged error is one that might have been readily corrected if it had been called to the trial judge's attention. *Bennett v. State,* 230 Md. 562; *Canter v. State,* 220 Md. 615; *Reynolds v. State,* 219 Md. 319." Although Md. Rule 756 g allows this Court to "take cognizance of and correct any plain error in the instructions, material to the rights of the accused," even though no objection to the instructions was raised, we are of the opinion that the trial judge's erroneous instructions here were not so material to the rights of the appellant as to constitute reversible error.

Appellant's second contention, that he was denied a speedy trial, is without merit. Since no demand was made by the appellant, and he has not shown that he suffered actual prejudice, or even a strong possibility of prejudice, he must, under these circumstances, be deemed to have waived his right to a speedy trial. *King v. State,* 6 Md. App. 413; *Fabian v. State,* 3 Md. App. 270, 283-288; *State v. Long and Nelson,* 1 Md. App. 326. Moreover, we find that the five month period between indictment and trial was not, *per se,* an unconstitutional delay.

We find no merit in appellant's third contention that "the testimony of Correctional Officer Lieutenant Gerald L. Grimm, was so contradictory that it was incapable of belief * * *." We have examined the officer's testimony and the inconsistencies, if they may be characterized as such, were inconsequential and would affect only the weight of the evidence which is for the trier of facts to determine. *Wilkins v. State,* 5 Md. App. 8, 21.

Appellant finally contends that the lower court erred in denying his motion for a change of venue since "practically everyone in Hagerstown knows of all activity at the Center." The docket entries indicate that such a mo-

tion was filed and, after hearing, denied. The appellant concedes that the record is silent as to what transpired at the hearing on his motion. It is, however, the responsibility of the appellant to include "in the record a transcript of all the testimony," Md. Rule 1026 c 2, as well as all other matters and issues which he desires this Court to review on appeal. Moreover, appellant failed to file a motion to correct the record as provided by Md. Rule 1027 b. Under the circumstances, there is nothing in the record before us to support appellant's contention that the lower court abused its discretion in denying a change of venue. See *Sizemore v. State*, 5 Md. App. 507, 511.

*Judgment affirmed.*

ORTH, J., dissenting:

The opinion of the Court holds that there was no reversible error here in the trial judge instructing the jury on a crime of which the appellant had been acquitted at the close of the evidence offered by the State. I cannot agree.

Carroll Gail White (the appellant), John Garfield Dunaway, John Frederick Edwards, Gregory Goods, Godfrey S. Hood, Willard Junior Hinton, Leonard John Hythe, Charles Norman Jackson, Ernest Edward Johnson, and Donald Eugene Sanders, all of whom were inmates of the Maryland Correctional Training Center, were jointly indicted, charged under the 1st count with the assault with intent to maim and under the 2nd count with the assault and battery of a correctional officer of the institution. When the indictment came on for trial, Hinton did not appear, being ill. The State entered a *nolle prosequi* as to Jackson and Johnson and the remaining seven defendants went to trial. The appellant and Hythe elected a trial by jury and the other five chose to be tried by the court. However all seven were tried at the same time.[1] At the close of the evidence offered by the

---

1. Apparently no objection to this procedure was made at trial by any of the defendants and the appellant does not question it on appeal.

State the court granted a motion for judgment of acquittal on both counts as to each of Edwards, Goods, Hood and Hythe. It granted a motion for judgment of acquittal on the first count as to each of Dunaway, Sanders and the appellant. Thus the trial proceeded as to only three of the defendants and only on the assault and battery charge—as to the appellant before the jury and as to Dunaway and Sanders before the court. At the close of all the evidence motion by the appellant and Sanders for judgment of acquittal was denied and the case went to the jury as to the appellant. The verdict of the jury as rendered by them does not appear in the transcript of the proceedings. The docket entry reads: "Verdict: *GUILTY* as to defendants, Dunaway, Sanders and White on Second Count Only (Assault); *NOT GUILTY* on First Count as to all three."

The record does not disclose a request for instructions. Although the court had granted the motion for judgment of acquittal as to the 1st count, charging assault with intent to maim, at the close of the evidence offered by the State, the court instructed the jury thereon, even though it was not before them, as well as on the second count charging assault and battery which was the only offense before them. It said with respect thereto:

> "There are two Counts in this Indictment. I will first tell you that Assault that is a common law crime and that is not covered by any definition in our Code of Laws of the State of Maryland, and neither is any punishment provided. The Court of Appeals of Maryland has interpreted a sentence as high as twenty years as not being cruel and inhuman punishment in assault cases. We have no statute.
>
> As to Assault with Intent to Maim, which is the First Count—there are two Counts in this Indictment — Assault with Intent to Maim or Wound and just plain Assault. If any person shall unlawfully shoot at any person or shall in any manner, unlawfully and maliciously attempt

to discharge any kind of loaded arms at any person, or shall unlawfully or maliciously stab, cut or wound any person, or shall assault or beat any person with intent to maim, disfigure or disable such person, or with intent to prevent the lawful apprehension or detained every such offender, and every person counselling, aiding or abetting such offender shall be guilty of a felony, and upon [conviction thereof] be punished by confinement in the penitentiary for a period not less than eighteen months nor more than ten years.

Now, that is described to be a Felony. It carries a penalty as high as ten years. And, this First Count would be considered in law to be a more serious offense than the Assault—a common Assault, or simple Assault. Of course, you will have to make the distinction. If you find, after I give you the instructions, I will tell you what the possible verdicts may be. Then, if you were to find that the State has proved beyond a reasonable doubt that the Defendant here was guilty of the First Count, you wouldn't have to answer the Second Count, and the penalty could be a period from eighteen months to ten years. If you found him Not Guilty on the First Count, and Guilty on the Second Count, then it would be up to the Court as to the penalty imposed and that would be anything that the Court would deem fair. We usually determine assault as when somebody threatens to do violent harm, or to apply force to another person. Meaning, if I raise my fist and say, 'I am going to hit you,' or if I point a gun at you and say 'I am going to shoot you' or take a knife and say 'I am going to stab you,' that would be common assault. Then, when we have that application of force, that means the unlawful application of force to the body of another, then that

is what we call battery. In Indictments, they always refer to it as Assault—what it really is. In this case, there wouldn't be any question of assault—there weren't any threats here. The only evidence that has been given, either would tend to show what happened to the victim here, the Institutional Officer, was an unlawful application of force, which you could determine to be, if you found guilt beyond a reasonable doubt, either assault with intent to [wound] or maim, or an assault."

Later in the charge, the court said:

"So, when you go into the Jury Room, you should start to deliberate on the First Count. That is, 'Unlawfully and maliciously wound the said C.O.R.H. Kershner with an intent then and there to maim, disfigure and disable. . . .' The testimony of the Guard is that there was kicking and beating to the body and you will have to consider whether that was such and whether the defendants did do that and if he was disabled. If you find that the State hasn't proved that beyond a reasonable doubt, why then you couldn't find a verdict of guilty on the First Count, and then you would consider the Second Count as to whether there was, however, what we call a simple assault."

At the conclusion of the charge the court asked if there were any objections to it. The transcript merely reads:

"BY COUNSEL: No objection.[2]
BY THE COURT: Alright, you may proceed to argue."

The arguments were not transcribed.

The appellant claims that he was denied due process of law by the instructions to the jury on the crime of which he had been acquitted by direction of the court and as

---

2. It appears that the defendants were separately represented.

to which the jury, therefore, had no function. The majority dispose of this contention by invoking Md. Rule 756 dealing with advisory instructions. Section f of the Rule pertains to the trial level of the proceedings, providing for the time and the manner in which challenge to the instructions may be made. Section g pertains to the appellate level of the proceedings. Inherent in this section is that if challenge is made as required, a party assigning error may assign an alleged error as of right. This Court then determines first if there was error and if there was, second, whether the error was such as to require reversal. It may be that the error, by application of the appropriate test, was harmless. Specifically stated in the Rule is that if challenge was not made as required, the party assigning error may not sign an alleged error as of right, and ordinarily this Court will not consider it. The majority invoke this provision and refuse to consider the error. However, the section further provides that this Court "either of its own motion or upon the suggestion of a party may take cognizance of and correct any plain error in the instructions, material to the rights of the accused even though such error was not objected to as provided by section f." The appellant suggests we take cognizance of and correct the alleged error but the majority disposes of the suggestion by being of the opinion "that the trial judge's erroneous instructions here were not so material to the rights of the appellant as to constitute reversible error." The exception permitting this Court to take cognizance of and correct an unchallenged error in the instructions requires two requisites. First, we must find that there was "plain error." Second, such plain error must be material to the rights of the accused. It seems that the majority recognize the error here as "plain error" and I do not think it even arguable that it is other than plain error for the court to instruct a jury on a crime not to be considered by them in their determination of the guilt or innocence of the accused. Section b of Rule 756 provides that the court "may and at the request of any party

shall give such advisory instructions as may correctly state the *applicable* law." (emphasis supplied) It also seems that the majority accept the error as material to the rights of the accused, but they consider such materiality to be of varying degrees for they find that the erroneous instructions were not *so* material as to constitute *reversible* error. The definition of "material" within the context of the Rule is stated by Webster's Third New International Dictionary of the English Language, unabridged, 1968 Ed. to be "being of real importance or great consequence." I do not believe that the definition permits or the Rule contemplates degrees of materiality with respect to the rights of an accused. A plain error is either material to his rights or it is not. If we find that it is material we may take cognizance of it and correct it; if we find that it is not material we may not. But in any event, whether the majority find that the error here was not material or whether they conclude that even though it was material they will not take cognizance of it, I think they are wrong. I feel that the error was material to the rights of the accused, that we are thus permitted to take cognizance of it and correct it, and that we should do so.

The majority arrive at their holding upon the bald statement that the erroneous instructions were not so material to the rights of the accused as to constitute reversible error; they offer nothing more in support. It is true that whether we take cognizance of and correct a plain error, even if material to the rights of an accused, is a matter within our discretion. But that is not to say that the failure to exercise the discretion to take cognizance of and correct a plain error in instructions, material to the rights of an accused, is necessarily proper. Recognizing the salutary reason for a rule requiring objection for appellate review, I do not feel that the rule should here be controlling. The error here was by the affirmative action of the presiding judge. If the error in the instructions be deemed an error of constitutional dimension, I cannot declare a belief beyond a reasonable

doubt that it was harmless. See *Chapman v. California,* 386 U. S. 18; *Hunt v. State,* 2 Md. App. 443. And if it be deemed not of constitutional dimension, I cannot say, with fair assurance, after pondering the instructions without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error. Thus it is impossible for me to conclude that material rights were not affected. I am not persuaded otherwise by the fact that the jury found the appellant guilty only of assault. Of course, empirical knowledge of the full effect on the jury of the erroneous instructions is limited. It cannot be ascertained from the record how they arrived at the verdict. But it should not be assumed that the verdict would have been the same had the jury had before them, as they should have, only the assault and battery, particularly in the face of the substance of the instructions on assault with intent to maim. In its instructions the trial judge went on at length, emphasizing that there were two counts before the jury, describing assault with intent to maim in detail, giving the penalty authorized on conviction of it, explaining the possible verdicts and the procedure in arriving at them and then at the end of the charge telling the jury they should start to deliberate on the first count. He read that count and said that if they found that the State had not proved that offense beyond a reasonable doubt, "then you would consider the Second Count" of simple assault. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, as I am, the conviction should not stand. The probability cannot be baldly dismissed that the erroneous instructions led the jury not to hold the balance nice, clear and true between the State and the appellant. It is my opinion that the judgment should be reversed.[3]

---

3. It is pointed out that instructions to the jury are not within the purview of Md. Rule 522, as to the admissibility of evidence, made applicable to criminal causes by Rule 725 f, nor within the purview of Rule 1085, dealing generally with the scope of review.