WILLIAM CUTLER MASON, ROBERT DONNELL
TAYLOR, a/k/a ROBERT DARNELL TAYLOR
AND DAVID LEE TAYLOR v. STATE
OF MARYLAND

[No. 610, September Term, 1972.]

*Decided June 8, 1973.*

132

The cause was argued before MOYLAN, POWERS and GILBERT, JJ.

*Joseph DePaul* for appellant William Cutler Mason and *James Ignatius Keane, Assigned Public Defender,* for appellants Robert Taylor and David Taylor, with whom were *DePaul, Willoner & Kenkel* on the brief, for appellants.

*Arrie W. Davis, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, John D. Bailey, State's Attorney for St. Mary's County,* and *Vincent J. Femia, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

The apparent murder of Jerome Pinkney, and the murder of his brother, Adrian Pinkney, on July 22, 1971, led to the indictment of David Lee Taylor (David), William Cornell Taylor (William), William Cutler Mason (Mason), Robert Donnell Taylor, also known as Robert

Darnell Taylor (Robert), and William Donald Hamilton (Hamilton),[1] by the Grand Jury of Prince George's County. Each was charged, insofar as Jerome Pinkney (Jerome) is concerned, with murder, conspiring to murder, kidnapping, false imprisonment, assault, assault with intent to murder, and felonious assault with intent to maim. They were further charged with the murder, conspiring to murder, kidnapping, and false imprisonment of Adrian Pinkney (Adrian).

At the conclusion of the State's case, the Assistant State's Attorney entered a *nolle prosequi* on the counts charging the murder and false imprisonment of both Jerome and Adrian. The trial judges then granted a judgment of acquittal as to William on each and every remaining count. Judgments of acquittal were also entered in favor of Robert and Mason as to all charges except conspiring to murder and kidnap Adrian. David's case was submitted to the jury with three counts still unresolved, *i.e.*, conspiring to murder Jerome, conspiring to murder Adrian, and kidnapping Adrian. The jury returned a verdict of guilty as to David, Robert, and Mason for conspiring to murder Jerome and Adrian. Each of the appellants was sentenced to concurrent 25 year terms of imprisonment.

On appeal to this Court the appellants mount a multifaceted attack upon the judgments of conviction. They contend the trial court erred when it:

1. admitted into evidence "the hearsay declarations of the alleged co-conspirators when the existence of a conspiracy had not been established by independent prima facie evidence,"

2. failed to grant a motion for judgment of acquittal because of the insufficiency of the evidence,

3. denied them due process of law by forcing them to be tried "on numerous counts for which the State knew it had no adequate evidentiary support,"

4. excluded persons from the jury who were opposed to capital punishment, and

---

1. Hamilton was not a party to this proceeding, his case having been severed at the request of the State.

5. denied "the Appellants' motion to dismiss for misjoinder or for severance."

Additionally, the appellants Mason and Robert maintain that the trial court further erred when it allowed the jury to consider the charge of conspiring to murder Jerome after a judgment of acquittal had been granted on that particular charge as to both of them.

## THE FACTS

At the trial, the State called Levi William Wedge, who, over objection on the ground that the testimony of the co-conspirator could not be admitted absent a *prima facie* showing by independent evidence of the conspiracy, testified that on the night of July 22, 1971, he, in the company of William, Robert, David, Mason, and Hamilton, met at the Crestview Towers located on Marlboro Pike in Prince George's County, Maryland. According to Wedge, the purpose of the meeting was to plan "to kill Adrian Pinkney." In furtherance of the plot, Wedge, together with Mason, went to the "Guys & Dolls Pool Hall" where they expected Adrian to be. Not finding Adrian there, the two began to leave, but at that moment Adrian and Jerome arrived. Wedge and Mason returned to Crestview Towers and, together with William, Robert, David, and Hamilton, a scheme "to get" Jerome was formulated. Wedge and Robert then enticed Jerome to leave the pool hall for the express purpose of "going to pick up some girls." Jerome was then taken to a wooded area where, after being bound and having his mouth taped, he was presumably strangled to death. The record does not disclose what method was employed to induce Adrian to leave the pool hall, but, in any event, Adrian was fatally shot and then transported to Virginia where his body was placed in the trunk of the car used by Jerome. The car was then driven to a parking lot at the National Airport where it was abandoned. Adrian's body was discovered, but the record is silent as to the recovery of that of Jerome.[2] The reason that Wedge gave for the

---

2. Other than the co-conspirator's statement, there is nothing to show that Jerome was in fact murdered.

intention to kill both Adrian and Jerome was that Jerome and Adrian apparently stole from the appellants the proceeds of a bank robbery which occurred in Germantown, Maryland.

Wedge acknowledged that he faced no charges because he was promised immunity in exchange for his testimony.[3] Wedge also testified that he observed that Mason was armed with a .45 caliber pistol and Hamilton had a .38 caliber revolver. One of the two bullets recovered from Adrian's body was a .45 caliber and the other was a .38 caliber.

The State's second witness was Sylvester Lawrence Henson who stated that on July 22, he met Hamilton and Robert. Hamilton told him he wanted to get rid of his black Cadillac[4] and later on the same evening Hamilton stated that "he had to git (sic) rid of Adrian." The same assertion was repeated the next day. Subsequently, Hamilton admitted to Henson that he, Hamilton, "had gotten rid of Adrian."

## ADMISSIBILITY OF CO-CONSPIRATOR'S TESTIMONY

Appellants vigorously argue that because the State failed first to show, by independent evidence, that a conspiracy did exist, it was estopped from introducing the testimony of the co-conspirator, Levi William Wedge. Appellants rely on *Greenwald v. State,* 221 Md. 245, 157 A. 2d 119 (1960) and *Johnson v. State,* 9 Md. App. 327, 264 A. 2d 280 (1970), which cites *Lawrence v. State,* 103 Md. 17, 63 A. 96 (1906). These cases are, however, factually inapposite.

In 3 Underhill's *Criminal Evidence* (5th ed.) § 861, it says; at 1929-1931:

> "In the trial of a substantive crime, the acts and declarations of one defendant are inadmissible against a codefendant, absent expressed or implied participation therein or adoption or ratification thereof by the codefendant. But the acts and

---

3. *But cf. Bowie v. State,* 14 Md. App. 567, 287 A. 2d 782 (1972).
4. Apparently Adrian was executed in the black Cadillac. The automobile, titled to Henson, but paid for by Hamilton, was burned and Henson reported the car to the police as being stolen.

declarations of one conspirator are admissible against a coconspirator when done or made during the course of the conspiracy, or, under certain circumstances, when done or made before the formation of the conspiracy or after its termination.

· * * *

It is sometimes said that before the declarations of one conspirator are admissible against a coconspirator the existence of the conspiracy and the connection of the coconspirator therewith must be established. This is true where the declarations of the conspirator are sought to be introduced through a third person; such third person cannot testify against the coconspirator until the latter's connection with the conspiracy is proved by evidence aliunde. *But the proposition is not true when the witness is a conspirator who seeks to testify about declarations made to him by his coconspirator. In such case the witness may testify and the testimony will be received against the coconspirator.* The analogy here is to the law of agency: the testimony of a third person as to what an alleged agent told him will not be received against the principal unless the agency is first established, but *the agent himself may always testify to relevant statements made to him by the principal.*

*Further, the declarations of one conspirator are admissible against a coconspirator when forming part of a conversation between them, and the acts of one are admissible against the other when done in the latter's presence and on the occasion of the alleged offense."* (Footnotes omitted) (Emphasis supplied).

In sum, the rule is that when the State seeks to use statements against a co-conspirator made by another co-conspirator to a third party, it must first demonstrate,

through evidence aliunde, the existence of a conspiracy, but the testimony of one conspirator is admissible against a co-conspirator without the necessity of establishing through an independent source the existence of the conspiracy.

The trial court correctly ruled that the testimony of Wedge, one of the conspirators, was admissible into evidence as against his co-conspirators, subject only to the general rule that the testimony of an accomplice must be corroborated.

## SUFFICIENCY OF THE EVIDENCE

It is, of course, axiomatic under Maryland law that an accomplice's testimony must be corroborated albeit the corroboration need be but slight. *Montgomery v. State,* 17 Md. App. 119, 300 A. 2d 218 (1973); *Early v. State,* 13 Md. App. 182, 282 A. 2d 154 (1971); *Foxwell v. State,* 13 Md. App. 37, 281 A. 2d 123 (1971); *Spies v. State,* 8 Md. App. 160, 258 A. 2d 758 (1969); *Boone v. State,* 3 Md. App. 11, 237 A. 2d 787 (1968), *cert. denied* 393 U. S. 872 (1968); *Bright v. State,* 1 Md. App. 657, 232 A. 2d 544 (1967).

To buttress the testimony of co-conspirator Wedge, the State, as we have previously noted, produced the witness Henson. Henson placed the appellant, Robert, and Hamilton together on July 22, 1971, when statements were made relative to "getting rid of the car" and "getting rid of Adrian." Henson further placed David and Robert in a gold Cadillac. The gold Cadillac and the black Cadillac were used in the perpetration of the crimes hereinbefore described. An agent of the Federal Bureau of Investigation testified that .45 caliber and .38 caliber bullets were recovered from the body of Adrian. Wedge had placed the .45 caliber weapon in Mason's possession and, according to Wedge, Mason had stated that he, Mason, "had shot Adrian in the head."

We perceive in this record no adequate corroboration of Wedge's testimony as to the conspiracy to slay Jerome. We think the trial court, in addition to the judgments of acquittal that it granted on motion, should have also granted the motion as to David because of total absence of corroboration of the co-conspirator's testimony. We,

therefore, reverse the judgment of conviction of David as to the second count — conspiring to murder Jerome.

## ALLEGED OVER-INDICTMENT

The appellants' third contention is that the State deliberately over-indicted to obtain at least a "compromise" verdict. Appellants argue that the purpose of "overcharging" was to prejudice the appellants in the eyes of the jury. Appellants rely solely upon *Price v. Georgia*, 398 U. S. 323, 90 S. Ct. 1757, 26 L.Ed.2d 300 (1970). In *Price*, the Supreme Court, after denial of relief in the State courts, reversed because of a double jeopardy issue and not because of a multiplicity of charges. In the case at bar, the indictment was in usual form. It included the main offenses and the lesser included ones. The appellants' allegation of "over-indictment" is but a bald assertion. There is not a scintilla of proof of bad faith or improper motive on the part of the State's Attorney.

## EXCLUSION OF PROSPECTIVE JURORS BECAUSE OF THEIR BELIEF AGAINST CAPITAL PUNISHMENT

Appellants next assert that they were denied their right to a fair and impartial jury trial because the trial court excluded from the jury those persons who professed conscientious scruples against capital punishment. During the course of the *voir dire*, the court asked, "Is there any prospective juror who has a belief against capital punishment? . . :, [A]re the beliefs such . . . that you could not render a fair and impartial verdict according to the law as to guilt or innocence? " Four of the jurors responded in the affirmative. Two said that while they did not believe in capital punishment, that fact would not preclude their rendering a fair and impartial verdict as to guilt or innocence according to the law. Another juror stated, "I don't believe in capital punishment." Whereupon the following transpired:

"THE COURT: Having that belief, is your belief such that you could not render a

> fair and impartial verdict according to law as to the guilt or innocence?

[THE JUROR]: I guess not.

THE COURT: I am afraid we can't be satisfied with guessing; we must know.

[THE JUROR]: No.

THE COURT: You could not give a fair and impartial verdict?

[THE JUROR]: I don't think so; no."

The juror was then excused for cause and appellants' counsel objected, saying: "It is not the interpretation I had as to guilt or innocence, just as to capital punishment." The court answered, "He says because of his belief he cannot give a fair and impartial verdict as to the question of guilt or innocence. [To the juror]: Is that your statement, sir?

[THE JUROR]: Yes.

THE COURT: You would be completely unqualified to make that decision.

[THE JUROR]: That is right."

The court excused the juror and another juror who had stated that he "would be biased" because of his feelings about capital punishment. We assume, *arguendo*, the issue to be before us.

Appellants argue that Md. Ann. Code Art. 51, § 9(b) is unconstitutional. That section provides:

> "*Belief Against Capital Punishment* — No person shall be disqualified, excused, or excluded from service in a particular case as a juror of this State by reason of his beliefs against capital punishment unless such belief would prevent his returning a verdict of guilty or innocent according to law."

Appellants charge that *Peters v. Kiff,* 407 U. S. 493, 92 S. Ct. 2163, 33 L.Ed.2d 83 (1972), when read together with *Furman v. Georgia,* 408 U. S. 238, 92 S. Ct. 2726, 33 L.Ed.2d 346 (1972), should be interpreted so as to void the above

quoted Maryland statute. We disagree. We find no basis for a correlation between *Peters* and *Furman*, nor do we perceive in either of those two cases any patent suggestion or latent intimation that would justify a conclusion that Art. 51, § 9(b) is unconstitutional. *Furman* was actually a per curiam opinion in which each of the Justices of the Supreme Court filed his own separate opinion. In Mr. Justice Brennan's concurring opinion is the language:

> "[T]his punishment [the death penalty] has been almost totally rejected by contemporary society."

Appellants latch on to the quoted sentence and attach to it the meaning that "[p]ersons holding belief against capital punishment constitute a substantial and discernible class." Therefore, appellants conclude, the exclusion of that class of persons from jury service is unconstitutional. The Maryland statute, however, does not exclude persons who hold beliefs against capital punishment from serving on juries, but, rather, prohibits a person from being disqualified for jury duty solely on that basis alone. The act enjoins such a class of persons from jury service only if "such belief would prevent his returning a verdict of guilty or innocent according to law." What the appellants apparently seek is a jury composed of persons whose belief against capital punishment is so strong that they could not return "a verdict of guilty or innocent according to law." In short, appellants want to try their case before a jury that, under no circumstances, would convict them in a capital offense.[5] Appellants' contention is patently specious.

### MISJOINDER OR SEVERANCE

Penultimately, appellants argue that their "Motion to dismiss for misjoinder or for severance" should have been granted. They correctly quote from *Wilson, Valentine and Nutter v. State*, 8 Md. App. 653, 666, 262 A. 2d 91 (1970), where it is said:

> "If the State chooses to prosecute an individual

---

5. This case was tried before the decision in *Furman v. Georgia, supra,* and *Bartholomey v. State*, 267 Md. 175, 297 A. 2d 696 (1972).

conspirator for a substantive crime, he is entitled to a separate trial on that substantive crime on demand, even though the substantive crime constitutes an overt act tending to establish the conspiracy."

Unfortunately for the appellants' position, however, the quotation is lifted out of context. In *Wilson, Valentine and Nutter,* six parties were indicted on a charge of conspiring to violate the narcotic laws of this State. Some of the accused were also indicted separately for other narcotic offenses. After discussing Md. Rules 716, 734 and 735, as well as the holdings of the Court of Appeals in *Lewis v. State,* 235 Md. 588, 202 A. 2d 370 (1964), and *McChan, Jones, Bethea, Griffin and Shelly v. State,* 238 Md. 149, 207 A. 2d 632 (1965), *vacated on other grounds,* 384 U. S. 893, 86 S. Ct. 1931, 16 L.Ed.2d 999 (1966), we pointed out, at 665, that one of the accused was "put on trial with his codefendants in one case in which he was charged jointly with all his codefendants and in three cases in which he was not charged at all." Another accused was tried "with his codefendants in one case in which he was jointly charged with all his codefendants and in two cases in which he was not charged at all." We said that merely because all the defendants were charged with conspiracy did not operate to remove the case from the ambit of *Lewis* and *McChan. Wilson* is readily distinguishable from the instant case. The appellants were not confronted with a plethora of indictments charging joint and individual offenses. On the contrary, they faced an 11 count indictment growing out of two events occurring at or about the same time and in which each appellant was involved with each other appellant. Under the circumstances of this case, where the evidence necessary to convict one of the appellants was the same evidence required to convict all of them, to have granted a severance would have resulted in a multitude of trials and unnecessary expense. As Judge Moylan succinctly put it in *Peterson, Deal and Hunt v. State,* 15 Md. App. 478, 496, 292 A. 2d 714 (1972):

"The decision as to whether to grant a severance

lies within the sound discretion of the trial judge under Maryland Rule 735, and one of the factors to be considered is the saving of time and expense which unnecessary separate trials would entail."

We find no abuse of discretion by the trial court's refusal to grant the motion for severance or dismissal.

Intertwined with the appellants' argument regarding misjoinder or severance is the assertion that the testimony of Wedge "patently exceeded the State's Bill of Particulars and the alleged scope of the conspiracy." We find nothing in the Bill of Particulars that would preclude the State's use of Wedge's testimony pertaining to the bank robbery in Germantown, which, we note, was brought out for the purpose of background as to the reasons for the co-conspirators' desire to kill the Pinkney brothers.

## ALLOWING A JURY TO CONSIDER CHARGES UPON WHICH A JUDGMENT OF ACQUITTAL HAD ALREADY BEEN GRANTED

Ultimately, the appellants Robert and Mason aver that it was reversible error for the trial court to allow the jury to consider and convict them of conspiring to murder Jerome after the court had granted a judgment of acquittal for that offense.

At the conclusion of the testimony offered by the State, motions were made for judgments of acquittal. The record reveals:

"THE COURT: Grant the motion for judgment of acquittal as to William Connell Taylor, in the second court, conspiracy to murder [Jerome Pinkney], and as to William Cutler Mason, Robert Donnell Taylor. Deny as to David Lee Taylor."

After a motion for judgment of acquittal has been granted on a particular offense, the trial court should not submit that issue to the jury for the determination of guilt or

innocence. It is pellucid that under the circumstances of this case the judgments of conviction entered against Robert and Mason as to the charge of conspiracy to murder Jerome must be vacated.

Robert and Mason see in the trial judge's allowing of the jury to consider the charge of conspiring to murder Jerome as affecting and prejudicially influencing the jury's verdict in the other charges against them. A similar situation to that presented by the instant case arose in *White v. State,* 8 Md. App. 51, 258 A. 2d 50 (1969) *cert. denied,* Court of Appeals of Maryland, March 10, 1970. White was charged in a two count indictment of assault with intent to maim and assault and battery. A judgment of acquittal was granted on the charge of assault with intent to maim, but the matter was still allowed to go to the jury. The jury acquitted on that charge but found White guilty on the charge of assault and battery. On appeal to this Court, White contended that reversible error had been committed when the trial judge instructed the jury on both counts after having granted the motion of judgment of acquittal on the first count. We said, at 52-53:

" . . . [T]he trial judge clearly should not have given instructions regarding that count. However, no objection to the instructions was interposed by appellant as required by Md. Rule 756 f, and in the absence of objection an allegation of error in the instructions is not ordinarily reviewable by this Court. As we said in *Parker v. State,* 4 Md. App. 62, 67 [241 A. 2d 185 (1968)]:

'The reason for the rule requiring objection as a prerequisite to appellate review is a salutary one, being designed to afford the trial judge an opportunity to correct inadvertent omissions or inaccuracies in his instructions, where the alleged error is one that might have been readily corrected if it had been called to the trial judge's attention. *Bennett v. State,* 230 Md. 562 [188 A. 2d 142 (1963)]; *Canter v. State,*

220 Md. 615 [155 A. 2d 498 (1959)]; *Reynolds v. State,* 219 Md. 319 [149 A. 2d 774 (1959)].' "

Our perusal of the record in this case discloses that the appellants did not except to the trial judges' advisory instructions to the jury as required by Md. Rule 756f.

Md. Rule 756g permits this Court to "take cognizance of and correct any plain error in the instructions, material to the rights of the accused," notwithstanding the fact that no objection to the instructions was raised in the trial court. *See Young v. State,* 14 Md. App. 538, 288 A. 2d 198 (1972); *Brown v. State,* 14 Md. App. 415, 287 A. 2d 62 (1972). As Judge Morton, speaking for this Court, said in *White, supra,* at 53:

" . . . [W]e are of the opinion that the trial judge's erroneous instructions here were not so material to the rights of the appellant as to constitute reversible error."

> *As to David Lee Taylor, judgment on count 2 reversed and judgment on count 9 affirmed.*
>
> *As to William Cutler Mason, judgment on count 2 vacated and judgment on count 9 affirmed.*
>
> *As to Robert Donnell Taylor, judgment on count 2 vacated and judgment on count 9 affirmed. One-sixth of costs to be paid by the appellant, William Cutler Mason. The other appellants are indigent.*