607 A.2d 120

**STATE of Maryland**

v.

**Ronald BAXTER.**

No. 1497, Sept. Term, 1991.

Court of Special Appeals of Maryland.

May 29, 1992.

Certiorari Granted Oct. 8, 1992.

David P. Kennedy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Scott G. Patterson, State's Atty., for Talbot County, Easton, on the brief), for appellant.

Ray L. Earnest (Broughton M. Earnest and Piper & Marbury, on the brief) Easton, for appellee.

Argued before MOYLAN, ROSALYN B. BELL, and HARRELL, JJ.

ROSALYN B. BELL, Judge.

In rare circumstances, resolution of an appellate case will be greatly aided by an appellate opinion in another case issued after submission of the parties' briefs, but before final decision. In this case, even more rare circumstances are presented: we have two such opinions, both issued within the last month, to guide our determination of the issues in this criminal case. They are *United States v. Felix*, —— U.S. ——, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992) and *Butler v. State*, 91 Md.App. 515, 605 A.2d 186 (1992).

The facts of this case are relatively straightforward. Pursuant to an anonymous tip, a police officer stopped appellee, Ronald Baxter, on October 25, 1990. A search of Baxter and his car uncovered seven grams of cocaine. Baxter was charged with possession of cocaine and possession with intent to distribute. On May 29, 1991, Baxter was found guilty of the former and acquitted of the latter.

The State then sought to prosecute Baxter for conspiracy to distribute cocaine, based on the following scenario.

When Baxter was arrested on October 25, 1990, a separate undercover drug operation was underway that indirectly involved Baxter. On that date, an undercover officer was meeting with a man named McSweeney to buy cocaine from him. Baxter was suspected to be McSweeney's cocaine supplier. At the time he was arrested, the police believed Baxter was on his way to supply McSweeney with cocaine for sale to the undercover officer. In response to Baxter's motion to dismiss, the State alleged that the undercover officer in the McSweeney investigation had knowledge as to Baxter being a co-conspirator with McSweeney, that the co-conspirator McSweeney was observed at Baxter's residence both before and after his arrest on October 25, 1990, and that the co-conspirator took the undercover officer to Baxter's residence on that date to show him that Baxter had been arrested.

Following a hearing on Baxter's motion to dismiss, the trial judge dismissed the indictment against Baxter, ruling that *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), barred a subsequent prosecution for conspiracy when establishing that conspiracy would involve reproving the facts previously used to prove the substantive offense already prosecuted. The State then appealed to this Court.

## FORMER JEOPARDY

Subsequent to the filing of the State's initial brief and Baxter's response, but before the State's reply brief, the United States Supreme Court decided *Felix.* Prior to this decision, the federal circuit courts had split on the impact of the *Grady* decision on successive prosecutions for substantive offenses and conspiracies. The Second and Tenth Circuits held that conspiracy prosecutions, which involved proof of overt acts already prosecuted as substantive offenses, were barred under *Grady,* while the First and Fourth Circuits had reached the opposite conclusion. *Compare United States v. Rivera–Feliciano,* 930 F.2d 951 (1st Cir.1991); *United States v. Clark,* 928 F.2d 639 (4th Cir.

1991); *Felix v. United States,* 926 F.2d 1522 (10th Cir.1991); *United States v. Calderon,* 917 F.2d 717 (2d Cir.1990).

Both the Supreme Court in *Felix* and the trial judge in this case were faced with resolving the tension between *Grady* and *Dowling v. United States,* 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990). The trial judge understandably [1] read *Grady* as meaning what it said: the Double Jeopardy Clause bars a prosecution where, "to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted." *Grady,* 495 U.S. at 508, 110 S.Ct. at 2087. The Supreme Court in *Felix,* however, "decline[d] to read the language so expansively. . . ." *Felix,* —— U.S. at ——, 112 S.Ct. at 1384. Instead, the Court reaffirmed the "established doctrine that a conspiracy to commit a crime is a separate offense from the crime itself." *Felix,* —— U.S. at ——, 112 S.Ct. at 1385. The Court concluded:

> "Thus, in this case, the conspiracy charge against Felix was an offense distinct from any crime for which he had been previously prosecuted, and the Double Jeopardy Clause did not bar the prosecution on that charge."

*Felix,* —— U.S. at ——, 112 S.Ct. at 1385.

Following *Felix,* it is now clear that the trial judge's ruling that *Grady* barred a subsequent prosecution for conspiracy based on previously prosecuted substantive offenses is no longer tenable. The State, invoking *Felix* in its reply brief, declares that there is now no bar to prosecution of Baxter for conspiracy. We do not agree.

In his brief, Baxter notes two alternative bases for upholding the trial judge's decision to dismiss the indictment

---

1. We base this judgment not on our own reading of *Grady,* but that of the Supreme Court itself in *Felix.* There, the Court opined that the Tenth Circuit "—with considerable justification—relied upon language from our *Grady* opinion to support its conclusion." *Felix,* —— U.S. at ——, 112 S.Ct. at 1383. Justices Stevens and Blackmun disagreed with this conclusion. *Felix,* —— U.S. at ——, 112 S.Ct. at 1385–1386 (Stevens, J., concurring in part and concurring in the judgment).

charging him with conspiracy. Acknowledging that these arguments were neither raised nor decided in the trial court, Baxter nevertheless seeks to have us exercise our discretion to review these issues to avoid the prospect of another appeal. Rule 8–131(a). Having considered the sufficiency of the record with respect to the issues raised by Baxter, to which the State offered no rebuttal in its reply brief, we will exercise our discretion to review these issues.[2]

## COLLATERAL ESTOPPEL

■ Baxter claims that this prosecution is barred by the collateral estoppel version of double jeopardy originally set forth by the Supreme Court in *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), and explicated in *Dowling v. United States*, 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990). As was the case with the former jeopardy issues discussed above, we have the benefit of a recent appellate decision to guide our analysis of this issue. In *Butler v. State*, 91 Md.App. 515, 605 A.2d 186, 195–199 (1992), Judge Moylan, analyzing both *Ashe* and *Dowling*, outlined in great detail the prerequisites for invocation of the collateral estoppel "species" of the double jeopardy "genus." Our evaluation of these prerequisites leads us to conclude, based on the State's proffer at the hearing on the motion to dismiss, that the State's prosecution of Baxter for conspiracy is barred by collateral estoppel. We explain.

We said in *Butler*, 605 A.2d at 195, speaking through Judge Moylan:

> "*Ashe* and *Dowling* together represent, effectively speaking, the sum total of collateral estoppel law in its new, constitutional manifestation. The core meaning was stated by *Ashe v. Swenson*, at 397 U.S. 443, 90 S.Ct. at 1194:

---

**2.** We also note the established principle that "[t]he decision of the trial judge ... will not be reversed if the result is correct despite the fact that he or she relied on the wrong grounds." *Stancil v. State*, 78 Md.App. 376, 383, 553 A.2d 268, *cert. denied*, 315 Md. 692, 556 A.2d 674 (1989), citing *Robinson v. State*, 17 Md.App. 451, 460, 302 A.2d 659 (1973).

" 'When [1] *an issue of ultimate fact* has [2] *once been determined* by [3] *a valid and final judgment,* that issue cannot again be litigated [4] *between the same parties* in any future lawsuit.' " (Emphasis in original)

In explicating the issues set forth in *Ashe* and restated in *Butler,* it is helpful to recall the setting of both *Ashe* and *Dowling.* In *Ashe,* collateral estoppel was held to apply, while in *Dowling,* collateral estoppel was held inapplicable.

In *Ashe,* the defendant was prosecuted for and acquitted of the robbery of one of six men in attendance at a poker game in a basement. The State of Missouri then sought to reprosecute Ashe for the robbery of one of the other poker players. He was convicted and sentenced to 35 years in prison. Applying the test set forth above to the circumstances of the case, the Supreme Court reversed Ashe's conviction:

"Straightforward application of the federal rule to the present case can lead to but one conclusion. For the record is utterly devoid of any indication that the first jury could rationally have found that an armed robbery had not occurred, or that Knight had not been a victim of that robbery. The single rationally conceivable issue in dispute before the jury was whether the petitioner had been one of the robbers. And the jury by its verdict found that he had not. The federal rule of law, therefore, would make a second prosecution for the robbery of Roberts wholly impermissible."

*Ashe,* 397 U.S. at 445, 90 S.Ct. at 1195. The Court then held the federal rule of collateral estoppel applicable to the states on the authority of *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969) and *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). *Ashe,* 397 U.S. at 445–446, 90 S.Ct. at 1195–1196.

In *Dowling,* on the other hand, the Supreme Court held that the collateral estoppel form of double jeopardy protection was inapplicable. Dowling was charged with attempted robbery and burglary of the home of one Vena Henry;

he was acquitted. Subsequently, Dowling was tried for several bank robberies unrelated to the events involving Vena Henry. Nevertheless, the government sought to have Henry's testimony admitted, under Rule 404(b)[3] of the Federal Rules of Evidence, for two reasons. First, the government believed that Henry's description of Dowling as wearing a mask and carrying a gun similar to the mask worn and the gun carried by the robber of the bank reinforced its identification of Dowling as the perpetrator. Second, the government sought to link Dowling with another man who was also at Henry's home. The trial court admitted the testimony, and the Third Circuit affirmed. *Dowling*, 493 U.S. at 343, 110 S.Ct. at 670.

The Supreme Court asserted two reasons in upholding the admissibility of the evidence elicited from Vena Henry. First, as Dowling acknowledged, the circumstances of the acquittal did not relate to any "ultimate fact" in the bank robbery. After discussing *Ashe,* Justice White continued:

"Dowling contends that, by the same principle, his prior acquittal precluded the government from introducing into evidence Henry's testimony at the third trial in the bank robbery case. We disagree because, unlike the situation in *Ashe v. Swenson,* the prior acquittal did not determine an ultimate issue in the present case. This much Dowling concedes, and we decline to extend *Ashe v. Swenson* and the collateral estoppel component of the Double Jeopardy Clause to exclude in all circumstances, as Dowling would have it, relevant and probative evidence that is otherwise admissible under the Rules of Evidence simply because it relates to alleged criminal conduct for which a defendant has been acquitted."

*Dowling*, 493 U.S. at 348, 110 S.Ct. at 672. The Supreme Court also noted that the burden of proof for admissibility

---

**3.** Rule 404(b) of the Federal Rules of Evidence precludes admission of other crimes, wrongs or acts to prove the character and predilection to perform similar acts, but allows admission of such evidence "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...."

of the evidence under Rule 404(b) of the Federal Rules of Evidence was less than that required for conviction.

"Because a jury might reasonably conclude that Dowling was the masked man who entered Henry's home, even if it did not believe beyond a reasonable doubt that Dowling committed the crimes charged at the first trial, the collateral estoppel component of the Double Jeopardy Clause is inapposite."

*Dowling,* 493 U.S. at 348, 110 S.Ct. at 672. With the circumstances of *Ashe* and *Dowling* firmly in mind, we shall proceed to apply the test of collateral estoppel set forth in *Ashe* and explicated in *Butler.*

### —Ultimate Fact?—

Baxter had already been acquitted of possession of cocaine with the intent to distribute. The State, in this case, is seeking to show that Baxter was part of a conspiracy. To establish that conspiracy, the State proffered (1) that an undercover officer was investigating an individual named McSweeney for suspected drug violations; (2) that the undercover officer would testify that McSweeney planned to sell the officer drugs on October 25, 1990, the day Baxter was arrested; (3) that the undercover officer had reason to believe that Baxter was McSweeney's supplier; and (4) that McSweeney had told the undercover officer that Baxter was part of the conspiracy. The State implicitly admitted that the transferee of the cocaine on October 25 was McSweeney. Under these circumstances, it is clear, as it was in *Ashe* and *Butler,* but not in *Dowling,* that the evidence the State is seeking to prove constitutes an ultimate fact in the present case: whether Baxter had reached an agreement (the *sine qua non* of a conspiracy) to deliver drugs to McSweeney.

### —Has the Ultimate Fact Been Previously Determined?—

In *Butler,* 605 A.2d at 187, Judge Moylan aptly described the nature of the "previous determination" component of collateral estoppel:

"Collateral estoppel, to an extent not shared by true double jeopardy or *res judicata,* is stubbornly fact-bound. When looking at a first juridical event to determine its impact upon a pending second juridical event, we are concerned not with the legal implications of the first event, as we would be in the true double jeopardy or *res judicata* context, but only with findings of fact actually or almost certainly made by lay fact finders. We are indifferent to whether those findings were logical or internally consistent. Our exclusive concern is with, to the extent we can discern it, what *was found* as a matter of fact and not with what *might have been found* or what *should have been found.*" (Emphasis in original)

While in many cases, such as *Butler,* the determination of what was or was not found by the jury or trial judge is exceedingly difficult to determine, this case presents rather obvious and simple circumstances. The State seeks to prove Baxter's state of mind (it claims Baxter was on his way to meet McSweeney to deliver drugs). The jury, by the simple fact of its verdict (not guilty of possession with intent to distribute), indicated that, at a minimum, it had a reasonable doubt as to Baxter's state of mind on October 25, 1990. Thus, this fact has been "previously determined" in Baxter's favor.

### —A Valid and Final Judgment?—

Based on Judge Moylan's discussion for this Court in *Butler,* at 197–199, it is clear that the prior factual determination was made as part of a valid and final judgment. Baxter was acquitted of possession of cocaine with intent to distribute. An acquittal on a criminal charge, unlike some of the dispositions discussed in *Butler,* is clearly the type of "final judgment" envisioned by the Supreme Court in *Ashe.*

### —Between the Same Parties?—

Once again, it is patent that the parties involved in this case are identical to the parties in the earlier prosecution, in which Baxter was acquitted of possession of cocaine with

intent to distribute. Baxter was the defendant then and now, and the State of Maryland is the interested sovereign, then and now.

—Procedural Issues—

In *Butler*, at 199–201, Judge Moylan set forth two procedural issues which must be met as a prerequisite to the invocation of collateral estoppel. First, as enunciated by the Supreme Court, the burden of persuasion must be the same or higher in the second litigation than it was in the first. *Butler*, at 199–200; *Dowling*, 493 U.S. at 347, 110 S.Ct. at 672. In *Butler*, we used the example of forfeiture cases:

"That the first jury was not 85% persuaded that the defendant perpetrated the underlying crime does not imply necessarily that they were not 51% persuaded. That first determination, therefore, did not settle in the defendant's favor the factual issue that was to be submitted to the second jury."

*Butler*, at 199–200. In *Dowling*, as discussed above, the fact that the first jury may have harbored a reasonable doubt as to Dowling's commission of the robbery of Vena Henry did not foreclose the determination that the evidence of that crime was sufficiently strong to serve as "other crimes" evidence under Rule 404(b), which is governed by a lower standard of proof. *Dowling*, 493 U.S. at 347, 110 S.Ct. at 672.

No such discrepancy in the burdens of proof exists in this case. In the State's proposed conspiracy prosecution, the State will be required to show, beyond a reasonable doubt, that Baxter intended to distribute cocaine to McSweeney on October 25, 1990. Under the same standard of proof, a prior jury has already decided this issue in Baxter's favor. As the Supreme Court said in *Ashe*, the collateral estoppel doctrine "surely protects a man who has been acquitted from having to 'run the gauntlet' a second time." *Ashe*, 397 U.S. at 446, 90 S.Ct. at 1195, quoting *Green v. United*

*States,* 355 U.S. 184, 190, 78 S.Ct. 221, 225, 2 L.Ed.2d 199 (1957).

In *Butler,* we also discussed the question of the burden of proof in collateral estoppel cases. Applying *Dowling,* 493 U.S. at 349, 110 S.Ct. at 673, Judge Moylan noted that "[a] party seeking to estop an opposing party from litigating a fact bears the burden of showing entitlement to that estoppel." *Butler,* at 200. Thus, we continued:

> "When ... the circumstances themselves are too ambiguous or the record itself too inadequate to permit an accurate assessment of what factual findings the jury must have made, it is the defendant, as moving party, who necessarily loses."

*Butler,* at 200. In this case, however, and as discussed above, it is abundantly clear, from the verdict of the prior proceeding itself, that the fact sought to be relitigated was, in fact, determined by the jury in Baxter's first prosecution. *See Ashe,* 397 U.S. at 445, 90 S.Ct. at 1195 (only rational conclusion is that the first jury decided that Ashe was not one of the robbers at the poker game).[4]

---

**4.** The defendant's burden of proof in this respect must be distinguished from the prosecutor's burden, when faced with a motion to dismiss, of proffering admissible evidence sufficient to withstand the motion. In this case, the tension between these distinct burdens of proof was reflected in the prosecutor's sketchy proffer to the trial court, both in the indictment itself and at the hearing on the motion to dismiss. We note that the indictment in this case charged Baxter with conspiracy "to violate the Controlled Dangerous Substance Laws, in violation of [Md.Code Ann.] Article 27, Section 290 [ (1957, 1992 Repl.Vol.) ]." Section 290 merely states that conspiring to violate one of the other CDS laws is also a crime. Perhaps anticipating the collateral estoppel problem, the State did not include in the indictment the nature of the conspiracy (distribution, transportation, manufacture, etc.), thus making the indictment vague.

At the hearing on the motion to dismiss, the prosecutor refused to state the basis of the conspiracy charge. When the trial judge asked for the specific nature of the conspiracy, the prosecutor gave the trial judge a hornbook definition of the word "conspiracy." While the prosecutor's insistence that he was not required to divulge the specifics of his case at a pretrial hearing was correct, once Baxter met his burden of showing that certain evidence was inadmissible, the burden then shifted to the State to proffer evidence independent of Baxter's

We hold that any prosecution of Baxter for conspiracy may not involve proof of any of the circumstances of his arrest on October 25, 1990, for which he was found guilty of possession of cocaine but not guilty of possession with intent to distribute. Because the jury in the earlier proceeding has already determined the question of Baxter's intent at that time, the State is collaterally estopped from relitigating that issue in any subsequent prosecution.

## THE PROPOSED TESTIMONY OF THE UNDERCOVER OFFICER

In addition to the circumstances of Baxter's arrest on October 25, 1990, the State also proffered the testimony of an undercover police officer who would testify that McSweeney, the alleged co-conspirator, had told the undercover officer that Baxter was part of a drug conspiracy. While the trial judge did not formally rule on the State's proffer in this regard, he expressed a strong sense of doubt as to the admissibility of such evidence.[5] We hold that this

---

previous arrest and conviction/acquittal. The State did not proffer that it would seek to prove anything beyond that Baxter was on his way to deliver cocaine to McSweeney on October 25, 1990. In the earlier trial, by its not guilty verdict on the felony charge, the jury found that Baxter did not have the intent to distribute cocaine. This proof is barred by collateral estoppel.

5. At the hearing on the motion to dismiss, the trial judge expressed incredulity with the State's proffer. After the State conceded that it would not call the alleged co-conspirator, McSweeney, as a witness, defense counsel summarized the State's proffer:

"[DEFENSE COUNSEL]:

      *     *     *     *     *     *

"Well, they've said they're going to produce evidence. As I interpret what they've said, they're going to try to get around McSweeney's absence through some sort of hearsay exception. They're going to try to bring in a police officer who will say, 'Well, we don't have McSweeney, but McSweeney told me that he had some conspiracy arrangement with Mr. Baxter.'

"THE COURT: *You're kidding.*

"[DEFENSE COUNSEL]: I'm not kidding, your Honor. That's, uh, that's—strange as it—

"THE COURT: *Experienced prosecutors like this are going to do that?*" (Emphasis added.)

proffered testimony on the part of the State, in the absence of some independent proof of the existence of a conspiracy, was patently inadmissible. We explain.

In Maryland, following the common law principle, statements by a co-conspirator made during and in furtherance of the conspiracy are admissible as exceptions to the evidentiary rule against hearsay. *Ezenwa v. State,* 82 Md.App. 489, 512, 572 A.2d 1101 (1990). As a prerequisite for the admission of such statements, however, the prosecution must first establish, through evidence *aliunde,* the existence of the conspiracy allegedly furthered by the statements. *Ezenwa,* 82 Md.App. at 512, 572 A.2d 1101, quoting *Mason v. State,* 18 Md.App. 130, 136–137, 305 A.2d 492, *cert. denied,* 269 Md. 763 (1973).[6] In this case, the State's proffer in response to Baxter's motion to dismiss demonstrates that the State will attempt to prove Baxter's involvement in the conspiracy with the co-conspirator's statements establishing the conspiracy. This is not permissible.[7]

We hold that the evidence contained in the State's proffer of the undercover police officer's testimony, to show Baxter's involvement in the conspiracy, would be inadmissible. Because the sum total of the State's proffer (the circumstances of Baxter's arrest and the hearsay testimony of the police officer) are both inadmissible, we hold that the trial

---

**6.** We note in passing that, had the State chosen to proffer the testimony of the actual co-conspirator, McSweeney, rather than the undercover police officer, such testimony would have been admissible without independent proof of the existence of the conspiracy. *Mason,* 18 Md.App. at 137, 305 A.2d 492.

**7.** The Court of Appeals has made clear that "[f]lexibility in the order of proof is allowed," *Grandison v. State,* 305 Md. 685, 733, 506 A.2d 580, *cert. denied,* 479 U.S. 873, 107 S.Ct. 38, 93 L.Ed.2d 174, *reh'g denied,* 479 U.S. 1001, 107 S.Ct. 611, 93 L.Ed.2d 609 (1986). Nevertheless, the State's proffer in this case contained no mention of any proof of the conspiracy outside the hearsay statements of the co-conspirator and the circumstances of Baxter's arrest, proof of which we have already held barred under the doctrine of collateral estoppel.

judge correctly dismissed the indictment charging Baxter with conspiracy.[8]

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY TALBOT COUNTY.

---

8.  In its response to Baxter's motion to dismiss, the State "dispute[d] the statement by [Baxter] ... that the conspiracy at issue would be limited to the transferance [sic] of cocaine from defendant Baxter to the co-conspirator on October 25, 1990." At the hearing on the motion to dismiss, however, the State offered no further substantiation of this contention. If there was other evidence upon which the State believed it could properly rely in charging Baxter with conspiracy, the time to reveal that evidence was at the hearing on the motion to dismiss.