## BUCK WILLIAMS *v.* STATE OF MARYLAND

[No. 46, September Term, 1976.]

*Decided December 9, 1976.*

The cause was argued before MOYLAN, MENCHINE and LOWE, JJ.

*Victoria Salner, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Bruce C. Spizler, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Charles Chiapparelli, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court. MOYLAN, J., concurs and filed a concurring opinion at page 207 *infra*.

The appellant, Buck Williams, was convicted by a Baltimore City jury, presided over by Judge Sol Friedman, of first-degree murder and of carrying a deadly weapon with intent to injure. Upon this appeal, he raises the single contention that the jury instructions erroneously allocated to him the burden of proof on the issue of self-defense in

contravention of *Mullaney v. Wilbur*, 421 U. S. 684, 95 S. Ct. 1881, 44 L.Ed.2d 508 (1975). The appellant acknowledges that he made no objection to the instruction as given as is required by Maryland Rule 756 f. Notwithstanding the fact that under Rule 756 g there is nothing preserved for appellate review as a matter of right, he asks us in the exercise of our discretion to "take cognizance of and correct any plain error in the instructions, material to the rights of the accused even though such error was not objected to as provided by section f of this Rule." Without any reasons needing to be assigned, we, in the exercise of our unfettered discretion, decline to do so. This is dispositive of the present appeal.

*Judgments affirmed; costs to be paid by appellant.*

*Moylan, J., concurring:*

I concur completely in the result in this case. I further concur wholeheartedly in the assertion that when we decline to exercise our option to notice "plain error" under Rule 756 g, no reasons need be assigned. Without necessarily speaking for any other member of the Court, I nonetheless choose to comment further upon this one occasion, confidently expecting that it will not soon again be necessary to do so. I do this not because this exercise of discretion not to notice, or any future exercise of discretion not to notice, requires further elaboration but rather because of a shared alarm at the increasingly promiscuous resort to the "plain error" exception to Rule 756 g. The exception has threatened of late to swallow its rule. As Judge Powers noted for this Court in *Brown v. State*, 14 Md. App. 415, 418, 287 A. 2d 62, the "plain error" exception to the rule "leaves slightly ajar the door to appellate relief." Whenever a door is left slightly ajar, there is irresistible temptation on the part of bar, and sometimes even bench, ever to widen the breach. The process is gradual and each progressive nudge imperceptible when viewed alone. What began, however, as a door almost, though not

quite, closed is suddenly perceived to be a door almost, though not quite, wide open. Periodically, we must return to the starting point of Rule 756 g to set the disarranged appellate house once again in order. In this regard, we deem it desirable to provide some insight into the types of considerations which may from time to time influence the exercise of discretion.

Let it be noted at the outset that we are not discussing *Mullaney v. Wilbur;* we are discussing Maryland Rule 756 g. Although the spate of cases generated by *Mullaney v. Wilbur* has been significant and although that subgroup has, therefore, taken on some identity as a subgroup, instructional errors under *Mullaney v. Wilbur* do not call for any special treatment. They are in the last analysis simply a series of specific instances of a broader phenomenon. That general phenomenon consists of instructions to the jury on the state of the law, the necessity for objecting to an instruction in order to preserve a point for appellate review and the utility of the "plain error" exception to the otherwise foreclosing effect of nonobjection.

In dealing with this general phenomenon, and with all specific instances thereunder, we begin and end with the clear text of Maryland Rule 756 g:

> "Upon appeal a party assigning error in the instructions may not assign as of right an error unless (1) the particular portion of the instructions given or the particular omission therefrom or the particular failure to instruct was distinctly objected to before the jury retired to consider its verdict and (2) the grounds of objection were stated at that time. Ordinarily no other error will be considered by the Court of Appeals or the Court of Special Appeals, but the appellate court, either of its own motion or upon the suggestions of a party may take cognizance of and correct any plain error in the instructions, material to the rights of the accused even though such error was not objected to as provided by section f of this Rule."

The quintessential thrust of the rule is that an objection unmistakably articulated before the trial judge, giving him the opportunity to rule thereon, is the *sine qua non* of appellate review. The salutary purpose of such a rule was expressed trenchantly by Judge Powers in *Braun v. Ford Motor Co.*, 32 Md. App. 545, 363 A. 2d 562. He drove home the oft-neglected truth that an appellate court is not some omnipresent, omniscient and omnipotent ombudsman ready, willing and able to set aright all the ills of the world. He reminded us that an appellate court sits rather in more limited judgment upon the rulings of a trial judge when he has been called upon to rule, saying at 32 Md. App. 548-549:

> "Perhaps the relative functions of appellate courts and trial courts in our system of justice should be more clearly understood. In trial courts, it is the function of the judge to preside over the trial, to direct the course of the proceedings, and to make all rulings on legal questions raised before him at any stage of the case. . . .
>
> . . . [E]rror in a trial court may be committed only by a judge, and only when he rules, or, in rare instances, fails to rule, on a question raised before him in the course of a trial, or in pre-trial or post-trial proceedings. Appellate courts look only to the rulings made by a trial judge, or to his failure to act when action was required, to find reversible error.
>
> This philosophy finds expression throughout the appellate process and specifically in Maryland Rules 885 and 1085, which provide that the appellate courts will not ordinarily decide any point or question which does not plainly appear by the record to have been tried and decided by the lower court . . . ."

The preeminent good sense of such a rule has been spelled out again and again by the Court of Appeals. *Briley v. State*, 212 Md. 445, 129 A. 2d 689; *Giles v. State*, 229 Md. 370, 183 A. 2d 359; *Jones v. State*, 229 Md. 472, 184 A. 2d 809; *Bennett v.*

*State,* 230 Md. 562, 188 A. 2d 142; *Cropper v. State,* 233 Md. 384, 197 A. 2d 112. We have ourselves pointed out the soundness of such a rule on frequent occasions. *White v. State,* 8 Md. App. 51, 258 A. 2d 50; *Young v. State,* 14 Md. App. 538, 288 A. 2d 198; *Cooper v. State,* 14 Md. App. 106, 286 A. 2d 579; *James v. State,* 14 Md. App. 689, 288 A. 2d 644; *Mason v. State,* 18 Md. App. 130, 305 A. 2d 492; *Law v. State,* 21 Md. App. 13, 318 A. 2d 859; *Walker v. State,* 21 Md. App. 666, 321 A. 2d 170; *Patterson v. State,* 22 Md. App. 13, 321 A. 2d 544.

Rule 756 g, however, is not couched in absolute terms. This too makes preeminently good sense. In permitting sufficient discretion to notice some errors, even absent objection, the rule provides that residual breathing space that protects against "hard cases making bad law." This discretion ameliorates the rigidity that once so plagued the common law as to give rise to the extraordinary recourse of going over the head of the law to the prerogative grace of the king and his chancellor—a recourse that gave birth to an independent legal system known as equity. Building some discretionary freedom of movement into the system itself — providing some flexibility at the joints — guarantees the pliability that will not break against hard cases.

As with any extraordinary relief, however, the exception should be resorted to only under exceptional circumstances for exceptionally compelling reasons. What must be curbed is the carelessly excessive invocation of the exception almost as a matter of course. With an eye toward curbing such excess, we point out, as guideposts, some of the more typical considerations that from time to time illuminate our exercise of discretion. It is by no means an exhaustive catalogue. The considerations that may influence us are infinite and unforeseeable and unsusceptible to mathematical measurement. We are not laying down rules but simply providing insight. The touchstone remains, as it always has been, ultimate and unfettered discretion.

From time to time, we may be influenced by the egregiousness of an error in instructions. We are not talking about mere misstatements of the law. Rule 756 g

contemplates erroneous instructions on the law, error above the level of harmless error and at times of constitutional dimensions, and yet still commands that a vigilant attorney make timely objection before such error will be preserved for appellate review. Absent such objection, the error will never be noticed as a matter of right. Ordinarily, it will not even be noticed in the exercise of discretion. Were defense attorneys correct in their anguished lamentations that all harmful error in instruction is "plain error" crying out for discretionary notice, the exception would indeed have swallowed its rule. Even granted harmful and material error of constitutional dimensions, notice thereof is still the exception and not the rule. It is difficult to make precise the imprecise: While we might choose not to notice some inartful or garbled definition of that indefinable abstraction called "proof beyond a reasonable doubt," we should almost certainly notice an erroneous instruction that presumed a defendant to be guilty until proved innocent and which placed upon him the full burden of proving his innocence upon the ultimate merits. Where error is flagrant and outrageous, we retain the residual option to notice it and to intervene. It is the extraordinary error and not the routine error that will cause us to exercise the extraordinary prerogative. The egregiousness of error is, however, no more than a consideration which might or might not influence us on a given occasion. The touchstone remains our discretion.

From time to time, we may be influenced by the probable impact of an error upon the fortunes of the convict. Here we are not concerned with an attenuated or finely spun theory that an erroneous instruction *may* have contributed to a guilty verdict. The tilt is diametrical to that whereby we measure "harmless error" where the point has been preserved for appellate review. There we must be convinced beyond a reasonable doubt that the error *did not* contribute to the guilty verdict before we may overlook it. Here we are more inclined to take notice only when we are persuaded that the error *probably did* have a crucial bearing upon the verdict. Again, it is difficult to make precise the imprecise: While we might choose not to notice an erroneous

instruction that speculatively helped grease an unquestioned scoundrel's slide to perdition, we should almost certainly notice an erroneous instruction that has been pivotal in consigning a true innocent — a Jean Valjean or an Edmund Dantes — to the galleys. Where the error has been critical or where innocence is outraged, we retain the residual option to notice the error and to intervene. In terms of impact, it is the extraordinary error and not the routine error that will cause us to exercise the extraordinary prerogative. The probable impact of error is, however, no more than a consideration which might or might not influence us on a given occasion. The touchstone remains our discretion.

From time to time, we may be influenced, at least peripherally, by what we perceive to be the degree of dereliction of the attorney in not lodging timely objection to an erroneous instruction. Within the broad category of professional diligence, lawyerly astuteness in being on top of changing constitutional developments may have some characteristics of its own, although the newsworthiness of the Supreme Court would seem to facilitate a sensitivity to its oscillations that would not attend where less dramatic changes in the law have been wrought by state courts, state legislatures and local rule-making bodies. Nonetheless, we can sympathize with the attorney who fails to anticipate a *Mapp v. Ohio*, a *Miranda v. Arizona*, a *Wade-Gilbert-Stovall* trilogy, or, of more recent impact, a *Mullaney v. Wilbur*. We are not so sympathetic, however, to the attorney who remains unaware of these decisions once they have been handed down. The diminution of sympathy runs in direct proportion to the passage of time from the date of promulgation of the new decision.

With regard to the impact of this lawyerly dereliction upon the question of the discretionary notice of "plain error," Chief Judge Murphy, specially assigned, articulated intelligent and cogent guidelines in *Squire v. State*, 32 Md. App. 307, 360 A. 2d 443. He there took the date of decision of a major Supreme Court case — June 9, 1975, in the case of *Mullaney v. Wilbur* — as the date on which lawyers are charged with notice of the decision. Acknowledging a degree

of arbitrariness in the selection of such a date, we perceive nonetheless its relative virtue of being less arbitrary than any other selection that might have been made. With respect to *Mullaney v. Wilbur* questions, it would hardly be less arbitrary to pick November 25, 1975, when *Evans v. State*, 28 Md. App. 640, 349 A. 2d 300, brought *Mullaney v. Wilbur* full force into Maryland law. One could as soon argue for the day on which *Evans v. State* appeared in *The Daily Record* or in the advance sheets of the *Maryland Appellate Reports* or in the advance sheets of the *Atlantic Reporter*. One could as soon argue for three days or three weeks after such publications to permit a busy lawyer to catch up on his accumulated reading. One could as soon argue for July 15, 1976, when the Court of Appeals first dealt with the question in *State v. Evans*, 278 Md. 197, 362 A. 2d 629. One could as soon argue for a wide variety of other dates on which decisions that came in the wake of *Evans v. State* first dealt in square holdings with matters dealt with in *Evans* only by way of dicta.

In *Squire*, the trial took place on June 13, 1975, four days after the Supreme Court decision in *Mullaney v. Wilbur*. Largely on that basis, this Court, speaking through Chief Judge Murphy, declined to notice "plain error" under Rule 756 g. In the case now before us, the trial took place on October 6, 7 and 8, 1975, a full four months after the Supreme Court decision in *Mullaney v. Wilbur*. In declining to notice "plain error" here, we are guided in part by the teaching of *Squire v. State*. A word is in order, however, about the effect of *Squire*. The State urges upon us that we must follow it as a matter of law. We cannot so read that decision or so interpret the law. Our ultimate discretion flows in both directions: just as we are never compelled to exercise it, so too we are never precluded from exercising it. The opinion in *Squire* intelligently enunciated the consideration that motivated the exercise of discretion in that case. After stating its concerns, the Court there concluded "we decline to invoke the provisions of the rule in this case." "Decline" is a verb unmistakably connoting volition and not compulsion. *Squire* did not establish an

absolute rule; indeed, in a discretionary area such as this, there can be no absolutes. The adjectives "absolute" and "discretionary" are flatly contradictory. To the extent to which we are influenced by the *Squire* decision in exercising our discretion here, we follow *Squire* not because we must but because we choose to.

All else being equal, the *Squire* guideline is one that will probably influence us in the future. Since the question is ultimately one of discretion, however, we could always choose to notice "plain error" of a *Mullaney v. Wilbur* variety even where it occurred after June 9, 1975, in a rare case where the erroneous instruction may have been egregious in the extreme, where the error may have been pivotal in subjecting an innocent to an unjust fate or where the legal issue involved is a fresh one so as to make the case a desired vehicle for pronouncements of anticipated precedential significance and interest. Conversely, we are by no means constrained to notice "plain error" even where such occurred prior to the June 9, 1975, promulgation of *Mullaney v. Wilbur.* Indeed, in the *Evans v. State* case itself, after pointing out that the errors there were of commission, were irremedial, were plain and were material to the rights of the appellant, we nonetheless pointed out that it was still in our ultimate discretion whether to notice the error or not. The fact that the lawyer there could not have anticipated *Mullaney v. Wilbur* was only of peripheral significance in our decision to notice the "plain error" even in that case. We said, at 28 Md. App. 650:

> "We note moreover as we exercise our discretion in this regard, *although the point is not of pivotal significance,* that the appellant and his attorney could not have anticipated *Mullaney v. Wilbur* and may have been persuaded that the instructions given accurately reflected the law of Maryland." (Emphasis supplied).

Our primary concern in noticing "plain error" in *Evans* and in roughly a score of cases following hard upon *Evans* was not forebearance because lawyers could not have anticipated

*Mullaney v. Wilbur* but rather the next and final factor which we shall discuss in setting out this partial but representative catalogue of relevant considerations. Our decision to write in those cases was not primarily remedial in inspiration. Although technical instructional errors, according to the lights of *Mullaney v. Wilbur*, had abounded, the chances that justice has truly miscarried were slight. Whether error occurred before, on or after June 9, 1975, it is still the extraordinary situation and not the routine error that will cause us to exercise the extraordinary prerogative. The degree of professional dereliction is, at most, no more than a peripheral consideration which might or might not influence us on a given occasion. The touchstone remains our discretion.

From time to time, we may be influenced by the opportunity which the notice of "plain error" affords to illuminate some theretofore murky recess of the law. The interpreting and molding of the common law is as weighty a consideration in appellate councils as is the correction of error in individual cases. Indeed, it was this consideration which was our primary motivation in choosing to notice the "plain error" in *Evans* and in the progeny of *Evans*. In announcing that we were choosing to notice the error in *Evans*, we attempted to make our purpose as clear as we possibly could, saying at 28 Md. App. 650-651:

> "More significantly, we exercise our discretion in noticing this particular 'plain error' because of the legion of cases already beginning to surface in the wake of *Mullaney v. Wilbur*, and because of the inevitably greater legions yet to follow. We deem a prompt review of these instructions, and those like them, 'necessary to serve the ends of fundamental fairness and substantial justice' even beyond the confines of this particular case. This case is, in short, an appropriate and necessary vehicle."

We note that in the case now before us, the legal issue involved lies in a field that has already been thoroughly ploughed. The case has no value as a vehicle. The utility of

noticing "plain error" as a vehicle to illuminate the law is, however, no more than a consideration which might or might not influence us on a given occasion. The touchstone remains our discretion.

One tangential comment is in order. Resourceful advocates frequently urge upon us the desirability of noticing "plain error," notwithstanding the lack of proper objection below, as a needed sanction and healthy therapy against erring judges who neglect to state the law with full accuracy and precision. That argument overlooks the concomitant and complementary desirability of forebearing to notice "plain error" and of holding fast to the requirement of Rule 756 f as a needed sanction and healthy therapy against erring lawyers who neglect to see the issues except in hindsight, who neglect to focus the attention of the judge upon a question so that he may make deliberate judgment thereon and who neglect to make the proper record for appellate review. They, for their part, must never be lulled into the sense of false security that the notice of "plain error" is routinely available to pull neglected chestnuts out of the fire. The sanction cuts both ways.

The calculus, the chemistry, the subtle and at times even subconscious interplay of these and other unnamed considerations defies precise analysis. We have not set forth rules for we cannot; this concurrence has hopefully provided some insight into the decisional process. It is anticipated that the exceptions to Rule 756 g will be rare; in all events, the granting of dispensation from the primary command of the rule is ultimately a discretionary act of grace. As with the royal prerogative to dispense residuary justice, whence judicial discretion anciently sprang, we act in the last analysis because we deem it appropriate to act. The only hard and fast rule is that there are no hard and fast rules.