600 A.2d 1142

**Darryl Shjuan AUSTIN**

v.

**STATE of Maryland.**

**No. 343, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

Jan. 31, 1992.

John L. Kopolow, Asst. Public Defender (Stephen E. Harris, Public Defender on the brief), Baltimore, for appellant.

Mary Ellen Barbera, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Andrew L. Sonner, State's Atty. for Montgomery County, Rockville, on the brief), for appellee.

Argued before WILNER, C.J., and MOYLAN and ALPERT, JJ.

MOYLAN, Judge

The number of occasions on which we are asked to invoke the "plain error" exemption from the otherwise foreclosing effect of non-preservation through failure to object remains so epidemic that it behooves us periodically, as forcefully as we know how, to do what we can to limit the contagion. Maryland Rule 4–325(e) states the basic and simple principle with unmistakable clarity:

"No party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection."

That is the norm. That is the clearly articulated standard that must be satisfied as a precondition for appellate review. It is the norm to which we have always adhered and to which we shall continue to adhere. The rule does go on to state a very limited exception, whereby an appellate court *may* (though it need not and usually will not) choose to overlook, in unusual circumstances, the procedural dereliction:

"An appellate court, on its own initiative or on the suggestion of a party, may however take cognizance of any

plain error in the instructions, material to the rights of the defendant, despite a failure to object."

We choose to restate in a published opinion the hierarchical relationship between the rule and its exception because the exception, through promiscuous indulgence, periodically threatens to swallow the rule. In *Brown v. State,* 14 Md.App. 415, 418, 287 A.2d 62 (1972), Judge Powers pointed out that the "plain error" exception to the rule "leaves slightly ajar the door to appellate relief ..." In *Williams v. State,* 34 Md.App. 206, 207–208, 366 A.2d 399 (1976), we picked up on Judge Powers' metaphor and noted the consequences:

"Whenever a door is left slightly ajar, there is irresistible temptation on the part of bar, and sometimes even bench, ever to widen the breach. The process is gradual and each progressive nudge imperceptible when viewed alone. What began, however, as a door almost, though not quite, closed is suddenly perceived to be a door almost, though not quite, wide open."

### The Present Case

The appellant, Darryl Shjuan Austin, was convicted by a Montgomery County jury, presided over by Judge William C. Miller, of attempted second-degree murder and the use of a handgun in the commission of a crime of violence. Upon this appeal, he raises the following two contentions:

1. That the judge committed plain error in instructing the jury on the *mens rea* requirement of attempted second-degree murder; and

2. That the judge erroneously refused to instruct the jury on other uncharged, albeit arguably related, offenses.

Briefly, let us set the stage. The appellant was a Montgomery County police officer. His shooting victim, Willie Lee Jackson, and he were both in love with the same teenaged girl, Khavah Carter. Willie Jackson testified that he was "so attracted to her, [he] was stupid with love for

her." Jackson wrote the appellant, informing him that they were both in love with the same woman, accusing him of being "dumb," and suggesting that they should talk out the matter. Jackson believed that the appellant was displaying "utter stupidity" because the appellant, at age twenty-eight, was nine or ten years older than Khavah.

The two arranged to meet on the evening of February 28, 1990, at 12601 Layhill Road, the apartment where Khavah was living. The appellant demanded that Khavah choose between them. Khavah did so. When she chose Willie Jackson, the appellant "flipped." The appellant initially shoved Khavah up against a wall, held her in a choke hold, and threatened to kill her. He finally stopped choking her after about ninety seconds. As Willie Jackson went to hold and comfort Khavah, the appellant opened fire on him. As significant insight into his purpose or *mens rea*, the appellant announced, as he fired, "You're going to die, bastard."

Lifesaving measures at the emergency room of the Suburban Hospital, however, thwarted that purpose. One bullet had entered the left side of Jackson's neck and exited through his cheek. A second bullet entered and exited through the frontal bone of his head. Willie Jackson nonetheless survived.

The appellant, incidentally, was on duty and in uniform at the time of the encounter. A recent graduate of the police academy, Officer Brian Holloway, assigned to the appellant to learn proper police procedures, was sitting outside in a cruiser, from which point he could observe the appellant, Willie Jackson, and Khavah inside the apartment. Although Willie Jackson himself apparently heard only two shots, Officer Holloway heard four gunshots in rapid succession and saw the appellant in a crouched position pointing his gun downward. After the appellant returned to the police cruiser, Officer Holloway observed him replace four rounds of ammunition in his revolver. In the patrol car, the appellant, moreover, concocted an exculpatory story that Officer Holloway was instructed to tell the Office of Internal Affairs.

Khavah told essentially the same story except that her recollection of what the appellant announced, as he fired, was, "Die, bastard, die."

### The Instructional Error

In instructing the jury on attempted second-degree murder, the judge began by defining second-degree murder:

"Second-degree murder is the killing of another person with either the intent to kill *or the intent to inflict such serious bodily harm that death would be the likely result.*

Second-degree murder does not require premeditation or deliberation. The elements of second-degree murder are that the conduct of the defendant caused the death of the victim. That the defendant engaged in the deadly conduct either with the intent to kill, *or intent to inflict such serious bodily harm that death would be the result.*" (emphasis supplied).

Thus far, the instruction was technically correct. When death results, there are no less than four *mens reae* that are sufficiently blameworthy to support a murder conviction. The instruction referred to two of them—the intent to kill and the intent to inflict grievous bodily harm. The difficulty is that the inchoate crimes of attempted murder and assault with intent to murder are far more limited in their mental elements than is the case with consummated murder. One may only be convicted of attempted murder when there is the specific and actual intent to kill. An intent to commit grievous bodily harm, by contrast, will not support a conviction for attempted murder although it will support a conviction for actual murder. The next step in the instructional syllogism was, therefore, incorrect:

"The third possible verdict would be guilty of attempted second-degree murder, which involves an attempted killing with the intent to kill *or inflict such bodily harm that would be likely to cause death,* but absent premeditation and deliberation." (emphasis supplied).

Let this be clearly noted. That instruction is wrong. *State v. Earp*, 319 Md. 156, 164–167, 571 A.2d 1227 (1990); *State v. Jenkins*, 307 Md. 501, 510–515, 515 A.2d 465 (1986); *Glenn v. State*, 68 Md.App. 379, 511 A.2d 1110 (1986), *cert. den.*, 307 Md. 599, 516 A.2d 569 (1986).

Let this be equally clearly noted. The appellant did not object to that instruction. Under the central thrust of Rule 4–325(e), therefore, he may not "assign as error the giving" of that instruction. The point, which would have been a very good one if properly preserved, has *not* been preserved for appellate review.

 The fact of instructional error is in no way dispositive of the preservation issue. The preservation rule contemplates error. It assumes that an error has probably occurred. Its concern is that the error was not brought to the trial judge's attention so that he could have had the opportunity to correct it. Indeed, if the instruction in question were not in error, it would make very little difference whether the point had been preserved or not.

Under the clear command of the rule, the appellant may not assign as error this erroneous instruction. We decline, therefore, to consider the contention. Nothing persuades us, in the exercise of our discretion, to take the extraordinary step of overlooking the appellant's procedural failure.

### The Appellate Discretion is Plenary

Many trial advocates seem to suffer the misapprehension that if the instructional error, even in the absence of an objection, is plain and is material to the rights of the accused, the appellate court is thereby divested of its discretion and is required to consider the contention on its merits. They would limit the appellate discretion to decisions as to whether 1) to consider whether an instructional error had even occurred, in the first instance, and 2) assuming the error so leaped off the page that it could not be ignored, to consider whether the error was actually material to the rights of the accused, in the second instance.

■ The appellate discretion is not so cabined. On the question of overlooking non-preservation, the appellate discretion is plenary. As a matter of course, it may be exercised so as not even to consider the initial question of whether instructional error occurred: "Because the issue has not been preserved, we, in the exercise of our discretion, decline even to read the arguably flawed instruction." Equally as a matter of course, the appellate court, if faced with an instructional error so patent that it could not be ignored, might nevertheless decline to go further and analyze the course of the trial to determine whether even the obvious error was at all material to the trial outcome: "Because the issue has not been preserved, we, in the exercise of our discretion, decline to make an assessment of whether the admittedly erroneous instruction was in any way material."

■ The ultimate appellate discretion, however, is one of whether, even in the face of error both plain and material, to overlook the procedural dereliction and to consider the contention upon its merits. In *Reynolds v. State*, 219 Md. 319, 324, 149 A.2d 774 (1959), the Court of Appeals was faced with an instructional error that did not fully define or explain the very offenses with which the defendant had been charged. The error was admitted by the State. Its materiality, with respect to crimes that by no means defined themselves, was clear. The Court of Appeals, nonetheless, declined to overlook the procedural default:

"The State frankly admits that the trial court did not fully instruct the jury as to the particular offenses charged in the indictment, and that it did not explain the real meaning of keeping a disorderly house or the other offenses charged in the indictment. But, the State insists that because the defendant failed to make a timely objection to the court's instructions, she is precluded from raising the objection here. We must agree....

But the defendant, admitting that she did not seasonably object pursuant to Maryland Rule 739 f, insists that this Court should of its own motion invoke the provisions

of Rule 739 g and take cognizance of and correct what she asserts is a plain error material to her rights. We do not agree." (citations omitted).

Judge Powers, in *Brown v. State*, 14 Md.App. 415, 418, 287 A.2d 62 (1972), explicitly reaffirmed that open-ended character of the appellate discretion:

"Any error, once recognized, may be called plain error, and unless it can be held to be harmless, it must be considered as material to the rights of the accused.

But it is not every such error that the appellate courts will take cognizance of and correct.... We take it that if the error is not plain, or if it is not material to the rights of the accused, the appellate court would in no event consider it. Even if the error meets both of these tests, its consideration on appeal is not a matter of right, for the use of the word 'may' makes it permissive, and necessarily leaves its exercise to the discretion of the appellate court."

In *Williams v. State*, 34 Md.App. 206, 211, 366 A.2d 399 (1976), we reiterated the basic principle:

"Even granted harmful and material error of constitutional dimensions, notice thereof is still the exception and not the rule."

In *Sine v. State*, 40 Md.App. 628, 631–632, 394 A.2d 1206 (1978), we were faced with an instructional error that arguably cast upon a defendant the burden of proving that his incriminating statements were involuntary. Notwithstanding that the error was both plain and material, we again declined to overlook the procedural default:

"Although it does not explicitly allocate the burden of proof as between the parties, this statement is clearly susceptible of the interpretation that the appellant bore the burden of proving by a preponderance of the evidence that his incriminating statements were made involuntarily. *Accordingly, it constituted error.* The record shows, however, and appellant concedes, that no objection was made to the instruction as required by Md.Rule 757

f.... Nevertheless, appellant urges us to exercise our discretion and take cognizance of and correct this error in the instructions under the provision of Rule 757 h. *The discretion conferred upon us by that rule will not be exercised as a matter of course, even where the error complained of is clear.*" (footnote and citations omitted) (emphasis supplied).

Indeed, in *Sine v. State, supra,* Judge Thompson amplified on the point that the fact that a material error has resulted in prejudice to the accused does not *ipso facto* call for the appellate court to entertain the contention notwithstanding its non-preservation. In *Sine,* this Court declined to consider the contention, after having noted, at 40 Md. App. at 632, 394 A.2d 1206:

"Appellant points to three considerations which, he argues, would justify the exercise of our discretion in his favor in this case. First, he points out that the error was prejudicial. The mere fact that the alleged error may have resulted in some prejudice to the appellant does not, in itself, justify the invocation of the plain error rule. Otherwise, any error that could not be considered harmless would be reviewable and Rule 757 f and h would be meaningless."

Chief Judge Murphy, on assignment to this Court in *Squire v. State,* 32 Md.App. 307, 309, 360 A.2d 443 (1976), *rev'd on other grounds,* 280 Md. 132, 368 A.2d 1019 (1977), explained that:

"[E]ven if an error in jury instructions is plain, its consideration on appeal is not a matter of right; the rule is couched in permissive terms and necessarily leaves its exercise to the discretion of the appellate court." (citation omitted).

### The Reason for the Requirement

■ The requirement that a defendant must have made a timely objection to an allegedly erroneous instruction in order to preserve the issue for appellate review is not an arbitrary one. It is supported by a solid rationale. At the

most basic level, it recognizes that appellate courts do not range forth, like knights errant, seeking flaws in trials. Their quest is far more modest. They monitor a trial for the limited purpose of seeing if the trial judge committed error. *Braun v. Ford Motor Co.*, 32 Md.App. 545, 548–549, 363 A.2d 562 (1976); *DeLuca v. State*, 78 Md.App. 395, 397–398, 553 A.2d 730 (1989).

In the context of jury instructions, the judge is ordinarily not charged with error unless diligent counsel have brought the alleged error to his attention and given him the opportunity to reconsider it and to correct it. Trial advocates, as members of the bar and officers of the court, are charged with the same responsibility of knowing the law as is the trial judge.[1] Indeed, in terms of mastery of the subject matter, trial advocates are frequently specialists whereas the judge, perforce, is a generalist.

The Court of Appeals stated in *Canter v. State*, 220 Md. 615, 617, 155 A.2d 498 (1959) that the rule:

"was designed to afford the trial judge an opportunity to correct inadvertent omissions or inaccuracies in a charge, and that we would not exercise our right to 'take cognizance of and correct any plain error material to the rights of the accused,' of our own motion, if the alleged error was one that might have been readily corrected if it had been called to the trial judge's attention."

Where the judge could easily have corrected the error if it had been drawn to his attention, the Court generally will not consider the contention. Accordingly, in *Reynolds v. State*, 219 Md. 319, 324–325, 149 A.2d 774 (1959), it declined,

---

[1]. As Judge Orth observed in *Anderson v. State*, 12 Md.App. 186, 203, 278 A.2d 439 (1971):

"If trial counsel here felt that this part of the charge needed correction or amplification they could have called it to the court's attention. Apparently they did not think that it did, for no objection was made. But now we are asked to consider that portion of the charge to have been clear error, even though competent and experienced counsel at the time did not so consider it ..."

even in a case involving plain and material error, to entertain the issue because:

"In this case it is obvious that the errors complained of are such that the trial court could have—and undoubtedly would have—corrected if the defendant had interposed her objections, as she should have done, before the jury retired to consider its verdict."

*Bennett v. State,* 230 Md. 562, 568, 188 A.2d 142 (1963) again explained:

"The purpose of Maryland Rule 756 f—which requires that objections to instructions shall be made before the jury retires to consider its verdict—is to give the trial court an opportunity to amplify or amend its charge if it deems amplification or amendment necessary." (citation omitted).

Chief Judge Murphy (now Chief Judge of the Court of Appeals) explained for this Court, in *Parker v. State,* 4 Md.App. 62, 67, 241 A.2d 185 (1968):

"The reason for the rule requiring objection as a prerequisite to appellate review is a salutary one, being designed to afford the trial judge an opportunity to correct inadvertent omissions or inaccuracies in his instructions, where the alleged error is one that might have been readily corrected if it had been called to the trial judge's attention." (citation omitted).

*See also White v. State,* 8 Md.App. 51, 258 A.2d 50 (1969); *Anderson v. State,* 12 Md.App. 186, 203, 278 A.2d 439 (1971).

So compelling is the argument that a trial judge should not be charged with an instructional error unless he has been timely alerted to the danger by diligent counsel and given the opportunity to rectify any mistake that we have deemed the issue of instructional error not to have been adequately preserved even where objections had been made, but had been made too late for the judge to act upon them. In *Vernon v. State,* 12 Md.App. 157, 163, 277 A.2d 635 (1971), objections to instructions were made only after the

jury had retired to deliberate. After the trial judge instructed the jury, various exceptions were dictated into the record. We declined to consider them. Judge Powers explained:

"It is clear that the purpose and design of the rule is to correct errors while the opportunity to correct them still exists. Only thus is an error preserved for appellate review.

It is *not* the purpose and design of the rule to provide an avenue for a party to lay away ammunition in the arsenal of appeal." (emphasis in original).

In *Leatherwood v. State,* 49 Md.App. 683, 694–695, 435 A.2d 477 (1981), we extended the preservation requirement a step further. In that case, objections had been made before the jury retired but in form so artless and indistinct that we deemed them inadequate to put the trial judge on proper alert. Chief Judge Gilbert explained:

"Faced with the indistinct exception articulated in the instant case, the judge was left, as are we, to speculate as to the specific grounds of the objection and, thus, had no opportunity to correct, modify, or clarify his jury instructions, if such action was, in the judge's view, warranted.

The best label we can place upon the appellant's exception is that it was 'a shotgun approach,' without any specifics, and consequently insufficient to satisfy the rule.

We have repeatedly held that one of the prime purposes of Rule 757 f is to afford the trial judge an opportunity to correct any misstatement of law, clarify an ambiguity, or correct inaccuracies."

### Guideposts for the Prudent Attorney

In the expectation that conscientious lawyers will not wish to raise appellate contentions that will be nothing more than exercises in futility, we point out, as guideposts, some of the more typical considerations that from time to time may influence our exercise of discretion. It is by no means an exhaustive catalogue. The considerations that may come into play are infinite, frequently unforeseeable and

unsusceptible to mathematical measurement. We are not laying down rules but simply providing insight. The touchstone remains, as it always has been, ultimate and unfettered discretion.

### Egregiousness of the Error

From time to time, we may be influenced by the egregiousness of the error. We are not talking about mere misstatements of the law. Rule 4–325(e) contemplates erroneous instructions on the law, error above the level of harmless error and at times of constitutional dimension, and yet still commands that a vigilant attorney make timely objection before such error will be preserved for appellate review. Were some defense attorneys correct in their claim that all harmful error in instruction is *ipso facto* "plain error" crying out for discretionary notice, the exception would indeed have swallowed its rule. As we pointed out in *Williams v. State*, 34 Md.App. 206, 211, 366 A.2d 399 (1976):

> "While we might choose not to notice some inartful or garbled definition of that indefinable abstraction called 'proof beyond a reasonable doubt,' we should almost certainly notice an erroneous instruction that presumed a defendant to be guilty until proved innocent and which placed upon him the full burden of proving his innocence upon the ultimate merits. Where error is flagrant and outrageous, we retain the residual option to notice it and to intervene. It is the extraordinary error and not the routine error that will cause us to exercise the extraordinary prerogative."

■ The error in this case, although unmistakably a misstatement of the law, was by no means egregious. In defining an attempted crime, it has always been a conventional practice to begin by defining the consummated crime and then to spell out those special attributes that constitute the attempt to commit it. It was only with *Glenn v. State, supra*, as late as 1986, that our legal analysis recognized for the first time that the *mens rea* for attempted murder is

narrower than the *mens rea* for consummated murder. The old (pre–1986) case law was rife with less sophisticated and overly broad definitions. That the trial judge intoned, dutifully, what the case law had pronounced from time immemorial was hardly egregious error. As an error, it was garden-variety, not extraordinary.

The egregiousness of error is, however, no more than a consideration which might or might not influence us on a given occasion. The touchstone remains our discretion.

## Impact Upon the Defendant

 From time to time, we may be influenced by the probable impact of an error upon the fortunes of the convict. Here we are not concerned with an attenuated or finely spun theory that an erroneous instruction *may* have contributed to a guilty verdict. The tilt is diametric to that whereby we measure "harmless error." There, we must be convinced beyond a reasonable doubt that the error *did not* contribute to the guilty verdict before we may overlook it. Here, we are more inclined to take notice only where we are persuaded that the error *probably did* have a crucial bearing upon the verdict.

In the present case, there is no realistic likelihood that the jury thought that the appellant pulled the trigger with an intent to do grievous bodily harm rather than with an intent to kill. The prosecution enjoyed the rare luxury of having the gunman announce his purpose even as he pulled the trigger, "You're going to die, bastard." In the posture of this non-preserved issue, we repeat that it is not the State's burden to persuade us beyond a reasonable doubt that the erroneous instruction *did not* contribute to the verdict. It is rather the appellant's burden to persuade us, to our satisfaction, that the erroneous instruction *did* contribute to the outcome. Needless to say, he has not done so.

Even if he had, moreover, that would not necessarily cause us to exercise our discretion in his favor. We would be inhuman if we would not be more moved to intervene in

the case of a probably erroneous conviction of a true innocent than in a case where the error only facilitated the conviction of a clear miscreant. It is not to disparage unfairly the latter concern to acknowledge that it is, in any event, less weighty than the former. Granting the appellant the benefit of his most strained and attenuated hypothesizing, he could only persuade us that, as he shot his victim twice in the head, he intended not murder but mayhem. That hardly engenders a sense of outraged innocence.

The possible impact of error is, however, no more than a consideration which might or might not influence us on a given occasion. The touchstone remains our discretion.

### Lawyerly Diligence or Dereliction

From time to time, we may be influenced by what we perceive to be the degree of dereliction of the attorney in not lodging timely objection to an erroneous instruction. In *Squire v. State,* 32 Md.App. 307, 360 A.2d 443 (1976), we exercised our discretion in one direction, whereas in *Squire v. State,* 280 Md. 132, 368 A.2d 1019 (1977), the Court of Appeals exercised its independent discretion in the other direction, with both exercises of discretion being concerned with the close question of how many *days* an attorney had had to take due notice of a new constitutional pronouncement from the Supreme Court.

In the present case, when appellant's counsel failed to object to the instructions, *State v. Earp,* 319 Md. 156, 571 A.2d 1227 (1990), had been on the books for a year and both *State v. Jenkins,* 307 Md. 501, 515 A.2d 465 (1986) and *Glenn v. State,* 68 Md.App. 379, 511 A.2d 1110 (1986), had been on the books for five years. As we noted in *Williams v. State,* at 34 Md.App. 212, 366 A.2d 399:

> "[W]e can sympathize with the attorney who fails to anticipate a *Mapp v. Ohio,* a *Miranda v. Arizona,* a *Wade–Gilbert–Stovall,* trilogy, or, of more recent impact, a *Mullaney v. Wilbur.* We are not so sympathetic, however, to the attorney who remains unaware of these decisions once they have been handed down. The diminu-

tion of sympathy runs in direct proportion to the passage of time from the date of promulgation of the new decision."

We are persuaded of no good reason why counsel in this case should not be held to the same standard for knowing the law as counsel, in turn, would hold the trial judge.

Resourceful advocates frequently urge upon us the desirability of noticing "plain error" as a needed sanction against judges who fail to state the law with full accuracy. That argument overlooks the concomitant desirability of holding fast to the rigors of Rule 4–325(e) as a needed sanction against lawyers who fail to spot the issues except in hindsight, who fail to focus the attention of the judge upon the issues, and who fail to make a proper record for appellate review. They must never be lulled into the sense of false security that the notice of "plain error" is routinely available to pull neglected chestnuts out of the fire. The sanction cuts both ways.

The degree of professional dereliction is, however, no more than a consideration that might or might not influence on a given occasion. The touchstone remains our discretion.

### The Case as a Vehicle

On rarer occasions, we might even be influenced by the opportunity which the notice of "plain error" might afford to illuminate some murky recess of the law. The interpreting and molding of the law is as weighty a consideration in appellate councils as is the correction of error in individual cases. Indeed, in *Evans v. State*, 28 Md.App. 640, 650–651, 349 A.2d 300 (1975), *aff'd State v. Evans*, 278 Md. 197, 362 A.2d 629 (1976), we expressly referred to this consideration as the thing that motivated us to notice the "plain error" in that case:

"[W]e exercise our discretion in noticing this particular 'plain error' because of the legion of cases already beginning to surface in the wake of *Mullaney v. Wilbur*, and

because of the inevitably greater legions yet to follow. We deem a prompt review of these instructions, and those like them, 'necessary to serve the ends of fundamental fairness and substantial justice' even beyond the confines of this particular case. This case is, in short, an appropriate and necessary vehicle."

We note that in the case before us, however, with *Earp, Jenkins,* and *Glenn* already on the books, the legal issue involved lies in a field which has already been thoroughly ploughed. The case has no value as a vehicle.

The utility of noticing "plain error" as a vehicle to illuminate the law is, however, no more than a consideration which might or might not influence us on a given occasion. The touchstone remains our discretion.

### *The Rule Regulating the Exercise of Discretion*

The only hard and fast rule is that there are no hard and fast rules. That is the nature of discretion.

### *The Other Contention*

The appellant also argues that Judge Miller erred in refusing to instruct the jury on other uncharged offenses such as assault with intent to murder, assault with intent to maim and disfigure, assault and battery, and reckless endangerment. *Hawkins v. State,* 291 Md. 688, 436 A.2d 900 (1981), is not remotely apposite because these other uncharged offenses are not lesser included offenses within attempted second-degree murder. Not only was it not error to have declined to give such instructions, it would affirmatively have been error to have given them. Those uncharged offenses were not issues before the jury for consideration. Definitions of them would have been outrageous "red herrings."

JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.