605 A.2d 150

Joyce DANNA

v.

STATE of Maryland.

No. 749, Sept. Term, 1991.

Court of Special Appeals of Maryland.

April 28, 1992.

Rachel Wohl and George E. Burns, Jr., Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Diane E. Keller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Sandra A. O'Connor, State's Atty. for Baltimore County, Towson, on the brief), for appellee.

Argued before ROSALYN B. BELL, FISCHER, and HARRELL, JJ.

HARRELL, Judge.

On 21 September 1978, appellant, Joyce Danna, was convicted by a jury in the Circuit Court for Baltimore County of first-degree murder and use of a handgun in the commission of a felony. For these crimes she received concurrent sentences of life in prison and five years, respectively. On 13 May 1991, appellant was resentenced to life in prison.

In this appeal, appellant presses before us a claim of instructional error, as well as a claim that the resentencing judge abused his discretion. Appellant failed to object to the instructions as given and thereby preserve the error for appellate review. Notwithstanding that fact, we shall exercise our discretion under Maryland Rule 4–325(e) to recognize and correct plain error material to the rights of a defendant.

## Facts

On 11 December 1977, appellant's husband was shot and killed in the bedroom of their house in Dundalk, Maryland. Two days later, appellant was charged with his murder.

At trial, appellant maintained that her husband's death was an accident. She testified that she had an argument with him in the living room of their house that afternoon, in the course of which he threatened her with his loaded and cocked service revolver.[1] She eventually persuaded him to put the gun down and they settled their argument. He then went upstairs, leaving the gun on the floor. Later, he called to her from upstairs and asked her to bring him the

---

1. Appellant's husband was a Baltimore City police officer.

gun so that he could uncock it. In appellant's own words, "I agreed with him readily because I cannot uncock a weapon and I was afraid if I empted [sic] it, I would shoot either myself or my son or my daughter." [2] She therefore brought the gun upstairs to him. As she was handing the gun to him, he grabbed for it. It discharged accidentally, killing him.

Appellant's story was corroborated by her daughter, who testified that she was upstairs before the shooting and heard appellant's husband call downstairs to appellant to "bring the gun up to uncock it." Detective Charles Henry of the Baltimore County Police Department testified that approximately two hours after the shooting appellant related the same story to him. He also testified that appellant had stated to him that she was "very unfamiliar" with guns and "afraid" of them. Officer Steven McDonald of the Baltimore County Police testified that appellant told him a slightly different story of how the shooting had occurred when he interviewed her almost immediately after the shooting. He also testified that she was "quite hysterical" at the time and that "none of her statements really followed each other."

The credibility of appellant's story was undermined by evidence that she was practiced in the use and handling of firearms. The evidence adduced at trial indicated that appellant held a job as an armed security guard at Fort Holabird, Maryland, between 20 January 1975 and 31 January 1976. On duty, she was required to carry a loaded gun of the same type as her husband's service revolver. She also received four hours of instruction in the use and handling of firearms. In May 1976, as part of her instruction, she took a firing range test and her scores qualified her as a marksman. Appellant admitted all of these facts at trial. She offered no explanation of the apparent inconsistency between the evidence that she was practiced in the

---

**2.** Appellant's infant son and seven-year-old daughter, the child of a previous marriage, lived in the house.

handling and use of firearms and her claims that she was inexperienced with and afraid of guns. Moreover, she failed to explain why, if she was practiced in the handling and use of firearms, it was necessary for her to carry a gun to her husband to uncock.

Appellant was ultimately convicted and sentenced to life in prison. The circuit court denied her motions for a new trial and for modification or reduction of her sentence. Appellant requested her trial counsel to file an appeal on her behalf. Her trial counsel failed to do so, however.

On 16 March 1982, the circuit court denied a petition for post-conviction relief filed on appellant's behalf. The sole issue raised in the petition was whether appellant was present at a bench conference held during *voir dire.*

On 1 March 1990, appellant again petitioned the circuit court for post-conviction relief, this time on the ground that she had been denied effective assistance of counsel. Appellant contended, *inter alia,* that her trial counsel had failed to investigate adequately and present at trial evidence known to him that would have bolstered her defense;[3] had failed to either advise her with respect to the advantages and disadvantages of her decision to testify or prepare her adequately for her trial testimony; and had committed numerous other prejudicial errors during trial. She requested that her conviction be vacated or, in the alternative, that she be granted a new sentencing and a belated appeal. After a hearing, the circuit court issued an opinion and

---

**3.** In support of this contention, Linda Hamer, an individual who had worked with appellant as a security guard, testified at a hearing on appellant's petition for post-conviction relief that she had attempted to contact appellant's trial counsel through a letter and several phone calls, none of which had received any response. Hamer also testified that appellant was frightened of and inept with guns, had not carried a loaded gun at work, and had not taken the firing range test herself (Hamer testified that she herself took the test in appellant's stead). In addition, there was evidence presented at the hearing that appellant's trial counsel had failed to investigate evidence known to him that appellant's husband had carried on a course of threatening and abusive conduct toward her throughout their marriage.

order refusing to vacate appellant's conviction but granting her a new sentencing and a belated appeal. The court granted the new sentencing on the ground that the trial judge had sentenced appellant without the benefit of a presentence investigation or any other information that might have mitigated her sentence. Appellant's application for leave to appeal the circuit court's refusal to vacate her conviction was denied.

A resentencing hearing was held on 13 May 1991. Notwithstanding evidence of mitigating circumstances adduced at the resentencing hearing,[4] appellant was resentenced to life in prison.

We shall include additional facts as necessary in our discussion of the issues presented.

## I.

Appellant's first contention is that her conviction should be overturned because of instructional error.

Instructing the jury on the State's burden of proof, the trial judge stated as follows:

Guilty beyond a reasonable doubt may be based on direct evidence of facts, or it may be based on what is referred to as circumstantial evidence. Circumstantial evidence means that there is proof of collateral facts and circumstances from which the existence of the main facts may be inferred according to reasonable and common experiences. Circumstantial evidence then is sufficient or adequate to support a verdict of Guilty. The Jury must be convinced beyond a reasonable doubt, but no greater degree of certainty is required where the evidence is circumstantial, as opposed to the case where the evidence is of a direct nature.

---

**4.** Evidence adduced at the resentencing hearing included testimony that, at the time of the shooting, appellant was a victim of the Battered Spouse Syndrome, and that she had conducted herself as a model prisoner in the nearly thirteen years since her conviction.

A Defendant is presumed to be innocent, so that every inference which can be reasonably drawn from the evidence should be drawn in favor of the Defendant; and where there is a circumstance where two inferences may be drawn from the same facts and one inference or conclusion is consistent with guilty, and one inference or conclusion is consistent with innocence, the Defendant is entitled to that inference which is consistent with innocence.

It isn't necessary that circumstantial evidence include every possibility of the Defendant's innocence or produce an absolute certainty. Reasonable doubt means just what it says. It does not mean doubt to a mathematical certainty, but it means *a doubt that is reasonable in the mind of each and every juror.* A jury is not required to be satisfied beyond a reasonable doubt as to each and every piece or link in the chain of circumstantial evidence, but when the jury considers the whole picture that adds up to this inference that they draw from all the circumstances, and from the entire set of circumstances considered together produce in the minds of a jury an abiding conviction of guilty, then a verdict of Guilty is justified. If, however, the circumstances in their totality do not convince you beyond a reasonable doubt as to guilt, then it is your duty to return a verdict of Not Guilty. (Emphasis added.)

The instructions suggest that a doubt is not reasonable unless the jurors collectively agree on its reasonableness. In other words, the instructions suggest that a defendant is guilty beyond a reasonable doubt if some jurors think that a reasonable doubt exists as to a defendant's guilt, but others do not. At no time did the trial judge instruct the jury that its verdict must be unanimous, or that each juror must be individually satisfied of a defendant's guilt beyond a reasonable doubt before the jury is authorized to find a verdict of guilty. *See Coby v. State,* 225 Md. 293, 297–99, 170 A.2d 199 (1961) (discussing unanimity requirement).

There is no question that an instructional error was made. "[U]nanimity is required for a jury determination on either side of an issue." *Mills v. State,* 310 Md. 33, 53, 527 A.2d 3 (1987), *rev'd on other grounds,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988). *See also Smith v. State,* 299 Md. 158, 163–64, 472 A.2d 988 (1984) ("The underlying requirement of a final verdict is that it be unanimous.").

> [T]he burden and standard of proof operate upon each juror individually and not upon the jury collectively on a majority basis, and ... the failure to achieve unanimity on either side of an issue ordinarily results in a hung jury.

*Mills,* 310 Md. at 61, 527 A.2d 3.

In *Mills,* a prison inmate was tried by a jury and convicted of the first-degree murder of his cellmate. In the trial's sentencing phase, the same jury found that the State had established the statutory aggravating factor that Mills committed the murder while he was confined in a correctional institution, and marked "no" beside each mitigating circumstance referenced on the verdict form, thereby requiring the imposition of the death penalty under the State's capital sentencing scheme.

Mills challenged the sentence on the ground that it was unconstitutionally mandatory. He asserted that the court's instructions and the verdict form required imposition of the death sentence if the jury unanimously found an aggravating circumstance but could not agree unanimously as to the existence of any particular mitigating circumstance. Thus, unless the jurors could unanimously agree on the existence of the same mitigating factor, the sentence would necessarily be death, even if some of the jurors believed that some mitigating circumstances were present.

The Court of Appeals held that the instructions *did not* violate the unanimity requirement. The Supreme Court reversed, however, holding that there was a substantial probability that the jurors believed they were precluded from considering any mitigating evidence unless they unani-

mously agreed as to the existence of a particular mitigating circumstance. *Mills,* 486 U.S. at 367, 108 S.Ct. at 1860–61. Likewise, the trial judge's misstatement that "[r]easonable doubt ... means a doubt that is reasonable in the minds of each and every juror[,]" taken together with the trial judge's omission to inform the jury of appellant's right to a unanimous jury verdict, create a substantial probability in the instant case that the jurors thought they were required to return a guilty verdict unless they unanimously agreed as to the existence of a reasonable doubt regarding appellant's guilt.

Appellant did not object to the instructions, however. Under Maryland Rule 4–325(e), we possess plenary discretion to notice plain error material to the rights of a defendant, even if the matter was not raised in the trial court. *Austin v. State,* 90 Md.App. 254, 257, 600 A.2d 1142 (1992). In *Austin,* this Court's most recent pronouncement on the subject, we stated that overlooking an appellant's procedural failure is an "extraordinary step," and that we will only choose to do so in exceptional cases. *Austin,* 90 Md.App. at 261, 600 A.2d 1142. We also discussed some typical considerations that may influence us to exercise our discretion, including, *inter alia:* (1) the egregiousness of the error; (2) its impact upon the defendant; and (3) the degree of lawyerly diligence or dereliction involved. *Id.,* 90 Md.App. at 267–72, 600 A.2d 1142. We stressed, however, that none of these considerations is dispositive: "the touchstone remains, as it has always been, ultimate and unfettered discretion." *Id.,* 90 Md.App. at 268, 600 A.2d 1142.

In the exercise of our discretion, we choose to take notice of and correct the instructional error in the instant case. We shall discuss our decision in light of some of the considerations enumerated in *Austin.*

## A.

### *The Egregiousness of the Error*

In order for us to take notice of an unpreserved error, the error should be "extraordinary." *Austin,* 90 Md.App. at

269, 600 A.2d 1142. In *Austin*, we rejected the contention that the giving of a "less sophisticated and overly broad" definition of the *mens rea* requirement for attempted murder, a definition that courts had consistently utilized prior to 1986, constituted extraordinary error. *Id.* "The error in this case, although unmistakably a misstatement, was by no means egregious.... As an error, it was garden-variety, not extraordinary." *Id.*, 90 Md.App. at 268–69, 600 A.2d 1142.

The error in the instant case, we think, is extraordinary. A defendant's right to a unanimous verdict is a fundamental constitutional right. *See, e.g., Smith v. State*, 299 Md. at 163–64, 472 A.2d 988. The purpose of the unanimity requirement has been described as "help[ing] effectuate the reasonable doubt standard[.]" *Rice v. State*, 311 Md. 116, 126 n. 4, 532 A.2d 1357 (1987), *quoting United States v. Gipson*, 553 F.2d 453, 457 n. 7 (5th Cir.1977). Thus, "[i]f one juror believes that the State has met its burden of proving the defendant's guilt, but the other eleven jurors are not convinced beyond a reasonable doubt of guilt, the result is ... a hung jury." *Mills v. State*, 310 Md. at 60, 527 A.2d 3. In the instant case, the instructions essentially reversed the effect of the unanimity requirement, taking the full force of it and applying it against appellant. According to the instructions, if one or more, but less than all, of the jurors had a reasonable doubt as to appellant's guilt, the result had to be a guilty verdict. Such an error cannot be described as "garden-variety." *Austin*, 90 Md.App. at 269, 600 A.2d 1142. Indeed, it is analogous to the misallocation of the burden of proof described by Judge Moylan in *Williams v. State*, 34 Md.App. 206, 211, 366 A.2d 399 (1976) (concurring opinion), *quoted in Austin*, 90 Md.App. at 268, 600 A.2d 1142:

> [W]e should almost certainly notice an erroneous instruction that presumed a defendant to be guilty until proved innocent and which placed upon him the full burden of proving his innocence upon the ultimate merits.

## B.

### *The Impact Upon the Defendant*

The question we examine under this heading is whether there is a reasonable likelihood that the error contributed to the jury's verdict. In *Austin,* we concluded that there was no realistic likelihood that the instructional error had contributed to the jury's verdict. The erroneous instruction in that case was that the jury could convict Austin of attempted murder if it found he had the intent to do grievous bodily harm. The evidence at trial was that Austin had announced, as he pulled the trigger, "You're going to die, bastard." Accordingly, we concluded that there was no realistic likelihood that, even absent the error, the jury would have returned a verdict other than guilty.

In the case before us, we find that there is a reasonable likelihood that the instructional error contributed to the jury's verdict. An examination of the Record indicates that the trial judge did not, at any time during the trial, indicate to the jury that its verdict must be unanimous, or that, before the jury is authorized to find a verdict of guilty, each juror must be individually satisfied of a defendant's guilt beyond a reasonable doubt. Consequently, it is unlikely that, notwithstanding the error, the jury was alerted to the unanimous verdict requirement.

In this regard, it is useful to compare the instant case with *Hutchinson v. State,* 41 Md.App. 569, 398 A.2d 451 (1979), *aff'd,* 287 Md. 198, 411 A.2d 1035 (1980), another case in which we took notice of and corrected plain error. The instructional error in that case also consisted of an omission and a misstatement. The jury had been instructed on the different offenses of which it could find Hutchinson guilty, but the trial judge at no time told the jury in precise terms that it could find Hutchinson not guilty. In addition, the contents of the jury's verdict sheet, which listed "not guilty" among three possible verdict choices, were misstated by the trial judge, who told the jury that the sheet contained "two possible verdicts, Count One guilty of rape

in the first degree and Count Two guilty of rape in the second degree." *Id.,* 287 Md. at 201, 411 A.2d 1035. No objection to the omission of a not guilty alternative from the verbal instructions or the misstatement of the verdict sheet's contents was made at trial. Nevertheless, we concluded that the error warranted correction and the Court of Appeals affirmed.

The instructional error in the instant case is arguably more likely to have affected the jury's verdict than the error in *Hutchinson.* In that case, the trial court gave both "beyond a reasonable doubt" and "presumption of innocence" instructions that were arguably sufficient to alert the jury to the fact that not guilty was an available verdict alternative. The Court of Appeals, however, was unwilling to assume that the jury presumed that not guilty was an available verdict alternative. "While it may appear absurd to some to suggest that the jurors were unaware that a not guilty verdict was a possible verdict, we have no way of knowing what effect the trial judge's erroneous omission had upon them." *Hutchinson,* 287 Md. at 208, 411 A.2d 1035. The deduction that not guilty is an available verdict alternative is a far simpler one to make than the deduction necessary in the instant case. Unlike the instructional error involved in *Hutchinson,* the instructional error in the instant case involved a point of law of which the jury would have no means of knowing except through judicial advice.

The fact that the trial judge's misstatement that "[r]easonable doubt ... means a doubt that is reasonable in the minds of each and every juror" occurred during his discussion of circumstantial evidence makes it even more likely that the instructional error contributed to the jury's verdict. There was no direct evidence introduced at trial regarding appellant's intent: the evidence regarding appellant's intent was entirely circumstantial. Since the trial judge's misstatement took place during his discussion of circumstantial evidence, its effect upon the jury may well have been exacerbated. *See Hutchinson,* 287 Md. at 208, 411 A.2d

1035 (noting that "the trial judge's influence upon the jury is profound.").

Similarly, we cannot be confident that the instructional error had no impact upon the jury's verdict because, unlike the evidence in *Austin*, the evidence in the instant case was not so damning as to render it unlikely that the jury could have returned any verdict other than guilty. We are mindful of Judge Moylan's statement in *Williams*, 34 Md.App. at 212, 366 A.2d 399, that:

> [w]hile we might choose not to notice an erroneous instruction that speculatively helped grease an unquestioned scoundrel's slide to perdition, we should almost certainly notice an erroneous instruction that has been pivotal in consigning a true innocent ... to the galleys."

Based upon the evidence at trial, we can confidently conclude neither that appellant was an "unquestioned scoundrel" nor that she was a "true innocent." We do not propose to engage in an exhaustive analysis of all the possible inferences that could have been drawn from the evidence at trial. We note, however, that our independent review of the Record indicates that there was sufficient evidence at trial to have supported a different verdict. This is not to suggest that the jury's verdict was against the weight of the evidence. On the other hand, the evidence hardly required a guilty verdict. In our view, therefore, there is a reasonable likelihood that the instructional error affected the jury's verdict.

## C.

### *Lawyerly Diligence or Dereliction*

In discussing the third consideration enumerated in *Austin*, Judge Moylan stated that "[f]rom time to time, we may be influenced by what we perceive to be the degree of dereliction of the attorney in not lodging timely objection to an erroneous instruction." *Austin*, 90 Md.App. at 270, 600 A.2d 1142. Our tolerance of an attorney's failure to object to an erroneous instruction usually diminishes in direct

proportion to the conspicuousness of the error, for "[t]rial advocates, as members of the bar and officers of the court, are charged with the same responsibility of knowing the law as is the trial judge." *Id.,* 90 Md.App. at 265, 600 A.2d 1142.

The error in the instant case is, of course, blatant. It did not involve a close question of law, or a failure to anticipate significant new case law. *See id.,* 90 Md.App. at 270–71, 600 A.2d 1142. Rather, appellant's trial counsel failed to spot a glaring error in the instructions, an error that could easily have been corrected by the trial judge had his attention been focused upon it.

The fact that an instructional error is apparent and should have been recognized by an attorney, however, is not necessarily dispositive of our decision whether to take notice of and correct plain error. "The touchstone remains our discretion." *Id.,* 90 Md.App. at 271, 600 A.2d 1142.

### D.

In deciding whether to invoke the plain error rule, "[t]he only hard and fast rule is that there are no hard and fast rules." *Austin,* 90 Md.App. at 19, 600 A.2d 1142. The error in the instant case was extraordinary and impacted substantial rights of appellant. We cannot say with confidence that the error did not prejudice her. Moreover, a careful examination of the circumstances surrounding the instant case suggests that it would be in the interests of fairness and justice to take notice of and correct the instructional error. We shall, therefore, grant appellant a new trial.

### II.

Appellant's other contention is that the resentencing judge abused his discretion in reimposing a life sentence upon her. Specifically, appellant contends that the resentencing judge improperly refused to consider appellant's post-conviction conduct in mitigation of her sentence. Be-

cause of our disposition of the first issue presented by appellant, we need not consider this issue. For the guidance of the circuit court, however, we note that appellant's contention appears to have some basis in the Record. We cannot say, based upon the resentencing judge's comments at the resentencing hearing, whether he was of the opinion that he could not consider matters subsequent to the original sentence in deciding upon an appropriate sentence for appellant. If he was of that opinion, he was incorrect. *See Bartholomey v. State*, 267 Md. 175, 194, 297 A.2d 696 (1972).

JUDGMENT REVERSED; COSTS TO BE PAID BY BALTIMORE COUNTY.